UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| MAYA DETIEGE and<br>DAYNE SHERMAN,<br><br>   *Plaintiffs,*<br>v.<br><br><br>KATRINA JACKSON, in her official<br>and individual capacities,<br><br>   *Defendant.* | CIVIL ACTION NUMBER: 3:23-cv-175<br><br><br>JUDGE FOOTE<br><br><br>MAGISTRATE JUDGE MCCLUSKY |

### FIRST AMENDED COMPLAINT

Plaintiffs MAYA DETIEGE and DAYNE SHERMAN bring this action against Defendant KATRINA JACKSON, seeking redress for violation of their First Amendment rights. In support of their Complaint, Plaintiffs state as follows:

### INTRODUCTION

1.

Plaintiffs Maya Detiege and Dayne Sherman, concerned citizens, engaged in lawful political discussion with Defendant Louisiana State Senator Katrina Jackson on the social media application "Twitter." Plaintiffs voiced their opposition to Senator Jackson's politics in several replies to "tweets" sent out by Senator Jackson. In retaliation for Plaintiffs' replies, Senator Jackson blocked Plaintiffs from viewing or engaging with Senator Jackson's tweets, retweets, or replies on Senator Jackson's Twitter page. Plaintiffs' views were unlawfully suppressed because Senator Jackson disliked their viewpoints. Plaintiffs seek intervention and redress from this Court.

## JURISDICTION

2.

This action is brought pursuant to 42 U.S.C. § 1983 premised on violation of Plaintiffs' First Amendment rights.

3.

This Court has jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

## VENUE

4.

Venue is proper in this District because the Defendant is, upon information and belief, a resident of the jurisdiction of the Western District of Louisiana. 28 U.S.C. § 1391 (b)(1).

## PARTIES

5.

Plaintiff MAYA DETIEGE is a resident of New Orleans, Louisiana.

6.

Plaintiff DAYNE SHERMAN is a resident of Tangipahoa Parish, Louisiana.

7.

Ms. Detiege and Mr. Sherman are politically active, law-abiding citizens, who enjoy civic engagement and spirited public debate.

8.

Ms. Detiege and Mr. Sherman are frequent users of the online social media application, "Twitter."

9.

"Twitter" is an online social media application where users are able to publish short messages called "tweets," to republish or respond to others' tweets, and to interact with other Twitter users in relation to those tweets.

10.

Ms. Detiege is passionate about her political beliefs. She often tweets her opinions and engages with other users about Louisiana politics. She also tweets about hockey.

11.

Mr. Sherman is passionate about his political beliefs. He often tweets about his opinions and engages with other users about Louisiana and United States politics. His Twitter @TweettheSouth is primarily focused on state and regional politics. He also tweets about and engages with other Twitter users on higher education and books.

12.

Twitter users can directly engage with other users through "following" each other; "replying" to one another's tweets; "liking" or "favoriting" other users' tweets; or "mentioning" other Twitter users in their tweets.

13.

"Twitter Rules" govern the actions of users on the platform.

14.

Plaintiffs abide by the Twitter Rules and have never been suspended, banned, or otherwise reprimanded by Twitter due to their actions on the platform.

15.

Defendant, SENATOR KATRINA JACKSON, is a resident of Monroe, Louisiana.

16.

Senator Jackson is a licensed attorney who currently serves as a Louisiana State Senator for the Democratic Party. Senator Jackson has served as a Louisiana State Senator since 2019 and is elected by Louisiana's 34th District.

17.

Prior to being elected a State Senator, Senator Jackson was a member of the Louisiana House of Representatives from 2012 until 2020.

18.

As a Louisiana State Senator and Congresswoman, Jackson is tasked with representing Louisiana citizens.

19.

Senator Jackson maintains a Twitter account that she uses to tweet regularly about developments, events, news, and announcements related to her work in the Louisiana state government.

20.

Senator Jackson almost exclusively tweets and engages with other users about matters of public concern.

21.

Her posts are largely political in nature and generally pertain to social and political issues. She regularly engages with her followers on political topics.

## FACTUAL ALLEGATIONS

22.

Senator Jackson's Twitter "Profile" is public, meaning that any Twitter user can view the details of her Profile regardless of whether they follow it.

23.

A Twitter Profile page includes the user's profile picture; the user's cover photo; the year the user created the account; the number of the user's "followers"; a biography or description with space for links to other websites; and the "Tweets," "Tweets & replies," "Media," and "Likes" timelines.

24.

Senator Jackson joined Twitter in March 2012, and her first tweet noted the beginning of the Louisiana legislative session.

25.

Senator Jackson's Profile photo and her Cover photo both represent her in her official capacity as a Louisiana State Senator.

26.

Senator Jackson's follower accounts number over six thousand.

27.

Senator Jackson's Profile biography states "I'm interested in a better Louisiana!!!"

28.

The link in Senator Jackson's Twitter biography directs users to a link "katrinarjackson.com." The top left corner of the webpage is labeled with Jackson's name and title. The banner in the center of the website provides a link to information on "COVID-19"

precautions. The center of the page displays video of Senator Jackson on the floor of the Louisiana Capitol. Halfway down the page, the messages "Register to Vote" and "Endorse Katrina" are highlighted in red. The bottom of the page includes Jackson's name, title, and law office address and phone number in Monroe, Louisiana.

29.

Neither Senator Jackson's website nor her Twitter Profile inform users and visitors of any specific content guidelines or rules pertaining to her Twitter Profile.

30.

The internet is the modern public square. It is where people go for the exchange of ideas and to engage in political dialogue.

31.

Senator Jackson uses her Twitter account to engage with and respond to people across the United States.

32.

When a Twitter user "blocks" another user's access to their Profile, the blocked user is prevented from engaging with the blocking user or viewing the blocking user's tweets.

33.

On or around April 5, 2013, Mr. Sherman and other Twitter users engaged in discussion of legislation sponsored by Senator Jackson, a state representative at the time. HB 660 would have created a process for public elementary and secondary schools to begin the school day with reciting the Lord's Prayer.

34.

Mr. Sherman and Senator Jackson, along with other Twitter users, amicably debated whether the bill was constitutional and discussed similar laws that courts had ruled were unconstitutional. On April 5, 2013, Senator Jackson tweeted at Mr. Sherman and others proclaiming, "nice debate tonight has given ideas to make sure bill is constitutional TTYL [talk to you later]."

35.

On April 7, 2013, Senator Jackson tweeted that amendments to the bill would be posted and asked who would engage in discussion about the proposals. Mr. Sherman replied "I'm in. U were in the top 5 best leaders in #LaLege '12 session."

36.

The online debate over the bill continued, and Mr. Sherman expressed his continuing beliefs that the bill would be unlawful. On April 8, 2023, Mr. Sherman sent a tweet in a thread including Senator Jackson and others saying, "Courts have said: Prayer has to be student-led during non-instruction hours. It cannot be prescribed."

37.

Senator Jackson replied "it is not during the school day we can't violate teachers who are not on clock constitutional rights[.]"

38.

Mr. Sherman disagreed and tweeted "Not what the courts say. It's unconstitutional #prayer."

39.

Sometime after this exchange, Senator Jackson blocked Mr. Sherman from accessing Senator Jackson's public Twitter Profile.

40.

This action prevented Mr. Sherman from viewing or commenting on any of Senator Jackson's posts. He was unable to view Jackson's posts, stay up to date on Jackson's political updates, or engage in any political discussion with Senator Jackson using his primary Twitter account.

41.

Following the United States Supreme Court's decision to overturn *Roe v. Wade* on June 24th, 2022, Senator Jackson sent out a tweet that reflected her anti-abortion stance.

42.

The tweet read "Let's Stand Together and Support Women and Children!!" and included a graphic titled "ROE is Overturned" which included the text, "Our advocacy must demand support for Women and children from the Womb to the Tomb." This text was followed by a bulleted list of advocacy points, and an image of a woman breastfeeding. The right side of the graphic was signed, "Senator Katrina R. Jackson.

43.

Senator Jackson, along with other members of the Louisiana State Senate, authored SB 342, a law that amended Louisiana's existing trigger law for abortion.

44.

Senator Jackson posted an image to her Twitter account on June 26th, 2022, depicting that under SB 342 abortions in Louisiana would be illegal unless giving birth would be life threatening to the mother.

45.

Senator Jackson's post about SB 342 also praised her role in passing the legislation. The text of the image said, "THANK YOU, SEN. JACKSON & GOV. EDWARDS, FOR AUTHORING AND SIGNING SB 324 TO IMPROVE THE '06 'TRIGGER LAW' & PROTECT WOMEN!"

46.

Ms. Detiege disagreed with Senator Jackson's anti-abortion position and policies.

47.

In response to Senator Jackson's June 24th tweet, Ms. Detiege quoted the tweet and graphic, stating "I say this with all disrespect: burn in hell. You don't care about women. You don't care about pregnant people. You don't care about children. You don't care about education. I do not respect all black women. Some of you bitches are very dumb."

48.

Ms. Detiege then replied to her own quote tweet, stating "I do not feel valued or supported by @KatrinaRJackson and I am actively rooting for her to be voted out in 2023. [praying emoji] can't come fast enough. Rooting for your downfall."

49.

Then, another user named "Mung" replied to Jackson's tweet and graphic, writing "Maybe you should have set that up before Roe was overturned? Too late now."

50.

Jackson replied to Mung, tweeting "I did but then no one states that fact the budget this year has $1.3 M to fight child sex trafficking and $3 M to support pregnancy centers - so much other funding but those who spew falsehood will not talk about that - oh and I have file (sic) equal pay bills."

51.

Ms. Detiege quoted Jackson's reply to Mung, stating "Lol yea that 3mil (0.0008% of the budget) is really gamechanging… Thanks for the pennies, you [clown emoji]."

52.

Senator Jackson then replied to Ms. Detiege, writing "Did you advocate for more?"

53.

Ms. Detiege then quoted Senator Jackson's reply, stating "You're the one bragging about how much it is. You're the elected official. Did YOU advocate for more? Probably too busy not paying attention in committee meetings when your colleagues were asking questions…Poor response from an elected official. Hope your career ends quickly [praying emoji]"

54.

After this interaction, Senator Jackson permanently blocked Ms. Detiege from accessing Senator Jackson's public Twitter Profile.

55.

This action prevented Ms. Detiege from viewing or commenting upon any of Senator Jackson's posts. She is unable to view Jackson's posts, stay up to date on Jackson's political updates, or engage in any political discussion with Senator Jackson using her primary Twitter account.

56.

Neither Mr. Sherman nor Ms. Detiege threatened Senator Jackson in any tweets or comments. Instead, they engaged in the political process and criticized Senator Jackson's policies.

57.

Senator Jackson blocked Plaintiffs because of the content and viewpoint of their speech.

58.

Senator Jackson has blocked multiple Twitter users including Lamar White, Jr., Sarah Stickney Murphy, and another user with the handle "@PaigeySpice."

59.

@PaigeySpice, Lamar White, Jr., Sarah Stickney Murphy allege Senator Jackson blocked them because she disagreed with their viewpoints in tweets on various political issues.

60.

On July 7th, 2021, @PaigeySpice quoted @GumboPAC's May 21st, 2020 tweet that said, "Senator Katrina Jackson is trying to pass a bill through the senate to lower auto insurance rates. Insurance industry apologists out in full force fighting against her. #lagov #lalege"

61.

In her quote tweet, @PaigeySpice included the text "Katrina Jackson also gave us the abortion ban legislation and then blocked me when I mentioned it in her comments. LA stays losing."

62.

On July 21st of the same year, @PaigeySpice tweeted "Yea here in Louisiana it is a DEMOCRATIC senator writing all of these bills and she blocked me when I questioned her lies. Senator Katrina Jackson."

63.

On June 3rd, 2022, Lamar White Jr. tweeted "Katrina Jackson blocked me 9 years ago after I pointed out that her bill mandating the recitation of the Lord's Prayer in public schools was dumb, offensive, and blatantly unconstitutional, like almost everything she proposes."

64.

And on the same date, Sarah Stickney Murphy tweeted "I got blocked last year when I pointed out that her anti-trans bills would open the door to pedophiles preying on children by inspecting their genitals under the guise of 'gender confirmation.' Now there's a bill in Ohio that would do exactly what I warned about…"

65.

Other users have also acknowledged Senator Jackson's tendency to block Twitter users who disagree with her viewpoints.

66.

On June 26th, 2022, Twitter user Debbie McCloud wrote, "@KatrinaRJackson you do know it illegal to block your constituents if you did want blow back you should have never sponsored the bill."

67.

A Twitter user named "Sofia" likewise tweeted, "'For all', meanwhile you are a public servant who blocks their constituents on twitter when they disagree with your policies. It's your literal job to hear these peoples concerns, why are you running from them."

68.

When a Twitter user is blocked, they are no longer able to see or reply to the blocking user's tweets, retweet the blocking user's tweets, view the blocking user's list of followers or followed accounts, or use the Twitter platform to search for the blocking user's tweets.

69.

Plaintiffs, therefore, cannot see or reply to Senator Jackson's tweets, retweet Senator Jackson's tweets, view Senator Jackson's list of followers or followed accounts, or use their primary Twitter accounts to search for Senator Jackson's tweets.

70.

Around February and March 2023, Senator Jackson unblocked both Ms. Detiege and Mr. Sherman, and they were able to access Senator Jackson's tweets.

71.

By February 17, Senator Jackson re-blocked Ms. Detiege, and she was no longer able to access Senator Jackson's tweets.

72.

Senator Jackson is likely to re-block Mr. Sherman if he disagrees with her on Twitter, once again restricting his access to information on legislative business and preventing him from engaging in discussion on state policies.

73.

The original content of Twitter's interactive mechanisms (tweets, retweets, replies, likes and mentions) are controlled by the user who generates them. The function is the same for blocking other Twitter users. It is controlled wholly by the person managing the user's Twitter Profile.

74.

Therefore, Senator Jackson, as manager of her public Twitter Profile, is solely responsible for blocking the Plaintiffs.

**STATEMENT OF THE CLAIM: FIRST AMENDMENT**

75.

The Plaintiffs re-allege and herein incorporates by reference the allegations set forth in the paragraphs above.

76.

Plaintiffs' words were core political speech. They were not obscene, fighting words or threats.

77.

Senator Jackson's Twitter account is a public forum subject to First Amendment protection.

78.

Senator Jackson blocks users, including Plaintiffs, according to arbitrary and unclear policies and practices.

79.

Senator Jackson blocks users, including Plaintiffs, because of disagreement with the content and viewpoint of their speech.

80.

Senator Jackson has no compelling or important interest in blocking users engaged in lawful speech, including Plaintiffs.

81.

Senator Jackson's censorship efforts are not narrowly or sufficiently tailored to achieve any compelling or important government interest.

82.

Senator Jackson's censorship chills speech and disagreement with her on the internet.

83.

Senator Jackson acted under color of state law when she blocked Plaintiffs from her Twitter Profile.

84.

Senator Jackson furthers her duties as a state senator by providing information to the public about official activities, soliciting input on policy issues, and informing Louisiana residents about pressing safety and public health issues, and uses her account for official business.

**PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiffs prays that this Court:

A. Declare Senator Jackson's actions in violation of Plaintiffs' rights and the First Amendment to the United States Constitution;

B. Issue an injunction requiring Defendant Senator Jackson to restore Ms. Detiege's access to her official Twitter Profile;

C. Issue an injunction preventing Defendant Senator Jackson from restricting the Plaintiffs' future access to her Twitter Profile;

D. Award Plaintiffs nominal and compensatory damages, not to exceed $20, against Defendant Jackson in her individual capacity;

E. Award attorneys' fees and costs; and

F. Any other relief that the Court deems equitable and just.

Respectfully submitted,

/s/ *Katie M. Schwartzmann*
**Tulane First Amendment Law Clinic**
Katie M. Schwartzmann La Bar No. 30295
Virginia Hamrick La Bar No. 40392
6329 Freret Street, Suite 130
New Orleans, La 70118
kschwartzmann@tulane.edu
vhamrick@tulane.edu
o: (504) 862-8813