UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA


MAYA DETIEGE and DAYNE SHERMAN       CIVIL ACTION NO. 3:23-cv-175

VERSUS

KATRINA JACKSON, in her official       JUDGE WALTER
and individual capacities

      MAGISTRATE JUDGE KAYLA D. MCCLUSKEY

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KATRINA JACKSON'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iv

INTRODUCTION ................................................................................................................... 1

STATEMENT OF MATERIAL FACTS.................................................................................. 2

    A.   Senator Jackson's Twitter Account. ..................................................................... 2

    B.   Senator Jackson Blocks Detiege Following a Racist and Profane Attack. ..................... 5

    C.   Senator Jackson Purportedly Blocks Sherman a Decade Earlier.................................. 8

    D.   Procedural Background............................................................................................. 8

STANDARD OF REVIEW ..................................................................................................... 9

ARGUMENT ........................................................................................................................... 9

I.    SENATOR JACKSON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
        PLAINTIFF SHERMAN'S FIRST AMENDMENT CLAIMS. ......................................... 10

    A.   Sherman Lacks Article III Standing. ..................................................................... 10

    B.   Sherman's Claims Are Time-Barred. ..................................................................... 12

II.   PLAINTIFFS' CLAIMS ARE BARRED IN THEIR ENTIRETY BY SENATOR JACKSON'S
       IMMUNITY.............................................................................................................. 13

    A.   On Plaintiffs' Theory, the Eleventh Amendment Bars the Claims............................. 13

    B.   On Plaintiffs' Theory, Legislative Immunity Independently Bars
        the Official- and Individual-Capacity Claims.......................................................... 14

    C.   Qualified Immunity Independently Bars the Individual-Capacity Claims. ................. 15

III.  IN ALL EVENTS, PLAINTIFFS HAVE NO VIABLE FIRST AMENDMENT CLAIM. ................... 17

    A.   Plaintiffs Have No Cause of Action Under § 1983...................................................... 17

        1.   Lindke articulates the governing standard. .................................................. 17

        2.   Plaintiffs fail Lindke Step One, since Senator Jackson Lacks Authority
             to Speak for the State. ............................................................................... 19

      3.     Plaintiffs fail Lindke Step Two, since Senator Jackson did not purport to exercise the State's authority in the relevant posts. ............................................. 20

   B.   Senator Jackson Did Not Violate Plaintiffs' First Amendment Rights. ...................... 22

CONCLUSION.................................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Pouncy*,
93 F.4th 331 (5th Cir. 2024) ............................................................. 12

*Dobbs v. Jackson Women's Health Organization*,
597 U.S. 215 (2022)........................................................................... 5

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)............................................................. 10, 11, 12

*Freedom From Religion Found. v. Abbott*,
955 F.3d 417 (5th Cir. 2020) ...................................................... 22, 23

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)........................................................................ 18

*Hall v. Louisiana*,
974 F. Supp. 2d 944 (M.D. La. 2013) ......................................... 13, 14

*Hearn v. McCraw*,
856 F. App'x 493 (5th Cir. 2021) ..................................................... 12

*Henderson v. Lowes Home Centers, LLC*,
2023 WL 2021862 (W.D. La. Feb. 15, 2023)..................................... 9

*Iancu v. Brunetti*,
588 U.S. 388 (2019)........................................................................ 23

*Kallinen v. Newman*,
2023 WL 2645555 (5th Cir. Mar. 27, 2023)..................................... 16

*Lane v. Franks*,
573 U.S. 228 (2014)........................................................................ 18

*Lindke v. Freed*,
601 U.S. 187 (2024)........................................ 1, 16, 17, 18, 19, 20, 21, 22

*McClelland v. Katy Indep. Sch. Dist.*,
63 F.4th 996 (5th Cir. 2023) ........................................................... 16

*Merced v. Kasson*,
577 F.3d 578 (5th Cir. 2009) ............................................................. 1

*Murthy v. Missouri*,
603 U.S. 43 (2024) .................................................................................... 10

*Patrick v. Ridge*,
394 F.3d 311 (5th Cir. 2004) ...................................................................... 9

*Pearson v. Callahan*,
555 U.S. 223 (2009) .................................................................................... 15

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) ...................................................................................... 13

*Quality Infusion Care, Inc. v. Health Care Serv. Corp.*,
628 F.3d 725 (5th Cir. 2010) ...................................................................... 9

*Ramirez v. Escajeda*,
44 F.4th 287 (5th Cir. 2022) ................................................................. 15, 16

*Robinson v. Hunt Cnty.*,
921 F.3d 440 (5th Cir. 2019) ...................................................................... 16

*Roe v. Wade*,
410 U.S. 113 (1973) .................................................................................... 5

*Walker v. Schult*,
45 F.4th 598 (2d Cir. 2022) ........................................................................ 15

*West v. Atkins*,
487 U.S. 42 (1988) ...................................................................................... 20

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) ...................................................................................... 14

**Constitutional Provisions**

La. Const. Ann. art. III, § 1 ............................................................................ 19

**Statutes**

42 U.S.C. § 1983 ......................................................... 1, 8, 12, 13, 14, 16, 17, 18, 19, 22

La. R.S. 40:1061 .......................................................................................... 5

**Other Authorities**

2024 La. Sess. Law Serv. Act 423 (H.B. 315) ............................................................................. 12

2022 La. Sess. Law Serv. Act 545 .............................................................................................. 5

**Rules**

Fed. R. Civ. P. 56 ......................................................................................................................... 9

## INTRODUCTION

It is remarkable that, in 2025, the Attorney General's office has been called to defend a Black state senator against allegations that the U.S. Constitution requires her to allow an anonymous and abusive troll to litter the senator's personal social-media account with messages like "burn in hell" and "you ['Black'] bitch[] ... are very dumb." Yet here we are.

This lawsuit was frivolous the day it was filed—for Plaintiff Maya Detiege (who typed those messages) plainly has no viable First Amendment claims against Senator Katrina Jackson. Eleventh Amendment immunity, legislative immunity, and qualified immunity all combine to bar Detiege's claims without even reaching the merits. This lawsuit became even more frivolous when Detiege's counsel filed an Amended Complaint adding Plaintiff Dayne Sherman—a Twitter user who (a) claims to have been blocked *a decade ago* by Senator Jackson but was not blocked when he joined this suit (a claim barred by the one-year limitations period) and (b) has now openly testified that the only "relief" he seeks is new First Amendment precedent (which means he has no Article III standing). Regrettably, these issues bring this case to the cusp of Rule 11 territory. And these are the only issues that this Court need address to render judgment as a matter of law for Senator Jackson, consider a Rule 11 show-cause order, and allow the parties to brief attorney's fees for Senator Jackson. *See Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009).

Out of an abundance of caution, however, Senator Jackson has briefed the merits of the case as well—and Plaintiffs fare no better there. They have no 42 U.S.C. § 1983 cause of action at all under the Supreme Court's recent decision in *Lindke v. Freed*, 601 U.S. 187 (2024). And even if they did, Senator Jackson unquestionably did not violate their First Amendment rights. Even on the merits, therefore, Senator Jackson is entitled to judgment as a matter of law.

## STATEMENT OF MATERIAL FACTS

### A.  Senator Jackson's Twitter Account.

Senator Katrina Jackson is a Black Democrat who currently represents Louisiana's 34th District in the Louisiana Senate. Exhibit A (Dep. of Katrina Jackson) at 12:19; *id.* at 58:8; *id.* at 152:4–5. Like millions worldwide, Senator Jackson has an account (@KatrinaRJackson) on "Twitter," now known as "X," which she has maintained since 2012. *Id.* at 153:19–p. 154:12. Her Twitter account is accessible to other Twitter users, and as with any Twitter account, any Twitter user may "follow" her, "like" her "tweets," "reply" to those tweets, and "re-tweet" them to share with their own followers. *See* Am. Compl. (R. Doc. 15) ¶¶ 22–23; *accord* Ex. A at 139.

Her account, unequivocally, is her own "personal page." Ex. A at 162:2–5; *id.* at 132:25 ("My Twitter is my, like, personal page."). The "only Senate page" she has is a Facebook page. *Id.* at 132:25–133:1; *id.* at 133:18–20 ("The only account that is ... like designated for the Senate is that Senate Facebook account."). And her personal Twitter account is likewise distinct from the House and Senate Twitter accounts, which "officially speak[] for the House or the Senate." *Id.* at 126:21–22; *id.* at 126:22–24 ("We don't control the House or the Senate social media accounts nor can we post on them."); *id.* at 228:14–16 ("[T]he State and the Senate have those official Twitter pages that speak for the State Senate and the State House."). When she originally created her account, she intended for the account to "update [users] daily" on legislative activities. *Id.* at 156:1–3. But she later realized that this was overly "ambitious," and concluded that her "personal life needs to be, you know, personal." *Id.* at 156:21–157:8; *see id.* at 157:14–17 ("never followed through with" original plan and instead "began to redirect everyone to the office"). And she writes "all of [her] tweets." *Id.* at 203:9–10.

2

Unsurprisingly, therefore, Senator Jackson's Twitter account looks like a personal account: Her wedding picture is her profile picture, her cover picture shows her surrounded by family and friends, and (in the example below) her most recent post is a call to church, *id.* at 182–85:



Ex. A-1. Her account also has a link to her website, katrinarjackson.com, which "[u]nfortunately" has "nothing current" and was "probably" linked in 2012 when the Senator originally intended to update users on legislative activities. Ex. A at 188:2–10; *see id.* at 194:17–19 ("this website was last changed three years ago because of having one staffer it became too much").

Her posts, too, are generally personal. For example, she might tweet about her wedding rehearsal and rehearsal dinner, or an honor her nephew received, or an inspirational message:







Ex. B-1, B-14, B-13.

At the same time, Senator Jackson has used her Twitter account to urge users to contact their senators to vote "yes" or "no" on certain bills. *E.g.*, *id.* at 223:21–24; *id.* at 229:14–16. Similarly, the Senator has tweeted links so that users could "watch" legislative hearings, *e.g.*, *id.* at 241–42, 251, 253, and alerted users about hearings where "public testimony was welcome," *id.* at 247:8–13. But overall, Senator Jackson "[a]bsolutely" does not "find Twitter useful." *Id.* at 161:3–5. She "sometimes for days forget[s] [she has] Twitter." *Id.* at 121:17–18. And especially as to "interact[ions] with other Twitter users on matters relating to the legislature and politics," she engages in those interactions "[v]ery infrequently." *Id.* at 179:22–25.

**B. Senator Jackson Blocks Detiege Following a Racist and Profane Attack.**

One of Senator Jackson's well-known public positions is that she is unapologetically pro-life. *E.g.*, *id.* at 84:11 (member of Democrats for Life). So, when the U.S. Supreme Court issued its decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), Senator Jackson unsurprisingly spoke out about the abortion issue. Prior to *Dobbs*, Louisiana law reflected a set of abortion restrictions that would come into play if and when the Supreme Court overturned *Roe v. Wade*, 410 U.S. 113 (1973). *See* La. R.S. 40:1061 *et seq*. Senator Jackson authored an amendment to that law, which then-Governor Edwards signed one week before *Dobbs*. *See* 2022 La. Sess. Law Serv. Act 545.

In the wake of *Dobbs*, Senator Jackson published two tweets highlighting this Louisiana law as amended:



Ex. A-2, A-3.

Apparently infuriated by the Senator's posts, Plaintiff Maya Detiege attacked Senator

Jackson. She operated under an anonymous username, with a profile picture that hid her face, and

a profile that appears to be a fan page for a Seattle hockey player. In two responses, Detiege told Senator Jackson to "burn in hell," referred to the Senator as a "Black" "bitch" who is "very dumb," and "root[ed] for [the Senator's] downfall."



Ex. A-4.

It turns out that Detiege lives in New Orleans and is not one of Senator Jackson's constituents. Ex. A at 387:17–20. And Senator Jackson immediately blocked Detiege. The Senator has blocked accounts that she believes are "fake" because they do not bear "a person's name," "identification information," "pictures," or "any connectivity with Louisiana." *Id.* at 268:7–16. She thus blocked Detiege "based on her derogatory comments" and because her account "looked like a fake created page." *Id.* at 269:9–15; *id.* at 339:1–2 ("I remembered why I had blocked her."); *id.* at 340:1–2 ("nothing identifiable but hockey"); *id.* at 345:8 ("It was a hockey fan page from another state."). Because of her vitriol, Detiege remains blocked today.

Coaxed by her counsel, Detiege testified in her deposition that she simply quoted a "meme" in criticizing Senator Jackson as a "dumb Black bitch." Ex. D (Dep. of Maya Detiege) at 55:9–14.

At the same time, however, she doubled down on the racist insult because she "thought that Senator Jackson was wrong." *Id.* at 56:5.

### C.  Senator Jackson Purportedly Blocks Sherman a Decade Earlier.

In a strange sideshow to this case, Plaintiff Dayne Sherman appeared for the first time in the Amended Complaint. Like Detiege, he is not one of Senator Jackson's constituents; he lives in Ponchatoula. And his story is puzzling, perhaps because he does not know when or why Senator Jackson supposedly blocked him. According to the Amended Complaint and his brief deposition testimony, he engaged with then-Representative Jackson in 2013 over the legality of a then-pending bill. Am. Compl. ¶¶ 34–38. And then, at some unspecified point in 2013, Senator Jackson blocked him. Ex. C (Dep. of Dayne Sherman) at 11:11–15. Senator Jackson testified that she has no recollection of this, and Sherman has provided no evidence other than his say-so. *See* Ex. A at 309:24–25 ("don't know if I blocked him"); *id.* at 355:4 ("don't remember if he was blocked").

But, all this is irrelevant, because Sherman has now testified under oath that he was not blocked at the time he filed his claims in the Amended Complaint. Ex. C at 12:20–13:1. He also has disavowed seeking any relief in this case. Instead, what he "would really like to accomplish is to have [this case] settle law that elected officials and government agencies can't block American citizens on social media." *Id.* at 18:25–19:3; *id.* at 19:7–9 (Q: "Are you looking to recover anything else?" A: "No.").

### D.  Procedural Background.

Detiege originally filed this suit, alleging a violation of her First Amendment rights under 42 U.S.C. § 1983 because of her inability to access Senator Jackson's Twitter page. Complaint (R. Doc. 1) ¶ 1–2. On August 28, 2023, Sherman joined the lawsuit, asserting the same claim against Senator Jackson in her official- and individual-capacities. Am. Compl. ¶ 1–2. Both Plaintiffs generally seek a declaration that Senator Jackson's actions violated their rights under the First

8

Amendment, an injunction requiring Senator Jackson to unblock Detiege, an injunction preventing Senator Jackson from restricting their future access to her Twitter account, and an award of nominal damages not exceeding $20 against Jackson in her individual capacity. Am. Compl. at 15–16.

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted." *Henderson v. Lowes Home Centers, LLC*, 2023 WL 2021862, at *2 (W.D. La. Feb. 15, 2023).

## ARGUMENT

Senator Jackson is entitled to judgment as a matter of law. The Court need not reach the merits of the case because the case is frivolous: Sherman has no standing and his claims are time-barred, and any number of immunity doctrines bars both Sherman's and Detiege's claims. And even if that were not so, the First Amendment claim in this case itself is not legally viable. The Court should therefore grant Senator Jackson's motion for summary judgment.

I.    **Senator Jackson Is Entitled to Judgment As a Matter of Law on Plaintiff Sherman's First Amendment Claims.**

As for Sherman, the Court may easily dispose of his frivolous claims both because he lacks Article III standing and because they are time-barred.

A.  **Sherman Lacks Article III Standing.**

Sherman's case "begin[s]—and end[s]—with standing." *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). "To establish standing, he "must demonstrate (i) that [he] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). He "must demonstrate standing for each claim [he] press[es] ... and for each form of relief [he] seek[s]." *Murthy*, 603 U.S. at 61 (cleaned up). And "[w]here, as here, the parties have taken discovery, [he] cannot rest on 'mere allegations,' but must instead point to factual evidence." *Id.* at 58.

Discovery has confirmed that Sherman failed to carry his burden—and that is because he has forfeited any argument that he has suffered an injury in fact for which he seeks redress. He claims that Senator Jackson blocked him on Twitter "for like ten years," beginning in 2013. Ex. C at 11:11–15, 13:22–23. But he also admitted that he was unblocked before the Amended Complaint was filed in August 2023, which (for the first time) named Sherman as a Plaintiff. *Id.* at 12:20–13:1. And he never testified that he has any fear of being re-blocked, let alone any evidentiary basis for such a fear. *See id.* at 16:24–25 ("I don't recollect ever being reblocked.").

These undisputed facts doom his claims for injunctive and monetary relief. *First*, Sherman seeks "an injunction preventing Defendant Senator Jackson from restricting [his] future access to her Twitter profile." Am. Compl. at 16. To obtain that relief, however, he "must establish" an injury that is "actual or imminent, not speculative—meaning that the injury must have already

occurred or be likely to occur soon." *All. for Hippocratic Med.*, 602 U.S. at 381. Put otherwise, "when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Id.* But it is undisputed that there is no evidence he suffered *any* injury at the time he filed his Amended Complaint, which for the first time named him as a Plaintiff. Moreover, it is undisputed that there is no evidentiary basis that would allow Sherman to "establish a sufficient likelihood of future injury." *Id.* His claim for injunctive relief, therefore, is dead on arrival.

Second, Sherman's Amended Complaint also sought "nominal and compensatory damages, not to exceed $20," ostensibly to remedy the claimed 2013 block that ended before he filed his claim. Am. Compl. at 16. But he forfeited that request in his deposition. Ex. C at 18:12–13 ("I am not seeking monetary compensation."). As a result, Sherman seeks no relief that would "redress that injury," *i.e.*, the 2013 block that expired before he filed his claim. *All. for Hippocratic Med.*, 602 U.S. at 381. His claim for monetary relief, therefore, is likewise dead on arrival.

Finally, it bears noting that Sherman's sole explanation for "[w]hat [he] would really like to accomplish" in this case—despite no Article III injury—"is to have it settle law that elected officials and government agencies can't block American citizens on social media." Ex. C at 17:25–18:3; *see id.* at 18:4–9 (Q: "So your goal is for there to be legal precedent established to that effect." A: "That is my goal." Q: "Are you looking to recover anything else?" A: "No."). The Supreme Court has long rejected this gambit, including just last year: "By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *All. for Hippocratic Med.*, 602 U.S. at 381. Accordingly, "a citizen does not have standing to challenge a government [action]

simply because the plaintiff believes that the government is acting illegally." *Id.* That precisely describes Sherman. The Court should dismiss his claims for lack of standing.

### B. Sherman's Claims Are Time-Barred.

Sherman's claims also are barred because he waited too long to sue. Because § 1983 does not contain a statute of limitations, the Supreme Court has held that courts must borrow "a forum state's general or residual statute of limitations for personal injury claims." *Brown v. Pouncy*, 93 F.4th 331, 332 (5th Cir. 2024). "In Louisiana, that period is one year" for causes of action arising before July 1, 2024. *Id.*; *see* 2024 La. Sess. Law Serv. Act 423 (H.B. 315) (amending Louisiana law to create a two-year limitations period for all causes of action arising after July 1, 2024).

By Sherman's own telling, "the interaction that ultimately led to Ms. Jackson blocking [him] occurred in 2013." Ex. C at 11:11–15. "I'[d] been blocked for like ten years," he said, and then he "saw" news of Plaintiff Detiege's lawsuit and decided he wanted to join the lawsuit. *Id.* at 13:20–23. There thus can be no question that Sherman's cause of action (if any) arose in 2013, that he was aware of this fact *for a decade*, and then that he chose to sue in 2023—well after his one-year limitations period expired. *See, e.g.*, *Hearn v. McCraw*, 856 F. App'x 493, 495–96 (5th Cir. 2021) (per curiam) ("Accrual begins when a plaintiff is aware that he has been injured or has sufficient information to know as much."). His lawsuit is plainly time-barred.

One final note: In unrelated contexts (typically employment-discrimination cases), the courts have sometimes relied on "the continuing violation doctrine" to save time-barred claims. That doctrine, of course, does not apply here. But, even if Sherman were tempted to try it out, the Fifth Circuit has repeatedly emphasized that the doctrine is satisfied only where a plaintiff can show that "there are separate-but[-]related acts at issue." *See Hearn*, 856 F. App'x at 496 (collecting cases). Sherman cannot do so because, "[s]imply, there is only one act at issue"— Senator Jackson's alleged blocking of him in 2013. *Id.* Accordingly, it is unmistakably clear that

Sherman's claims are time-barred—and for that reason, too, it was plainly frivolous for Sherman to file his claims, and Senator Jackson is entitled to judgment as a matter of law on his claims.

## II.    Plaintiffs' Claims Are Barred in Their Entirety By Senator Jackson's Immunity.

Plaintiffs fare no better together because, even assuming all of their allegations and evidence in their favor, their claims are barred by the Eleventh Amendment, legislative immunity, and qualified immunity.

### A.  On Plaintiffs' Theory, the Eleventh Amendment Bars the Claims.

Start with the Eleventh Amendment—and a precise definition of Plaintiffs' claims. As discussed below, *infra* Section III.A, Plaintiffs' lawsuit depends on this Court first finding that Senator Jackson engaged in "state action" within the meaning of 42 U.S.C. § 1983. If she did not (and indeed she did not), then Plaintiffs have no viable § 1983 claims at all. But, even if Senator Jackson *did* engage in state action, that would mean that the Eleventh Amendment bars this lawsuit. Either way, therefore, Plaintiffs' lawsuit fails.

"The Eleventh Amendment [] bars a suit against a state official when 'the state is a real, substantial party in interest.'" *Hall v. Louisiana*, 974 F. Supp. 2d 944, 952 (M.D. La. 2013) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984)). And "a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief." *Id.*

Here, for the reasons just stated, Plaintiffs' § 1983 claims work only if the Court assumes that Senator Jackson's Twitter activity is state action. On that assumption, their suit is "in fact a suit against a state [that] is barred" in its entirety, absent an exception to that rule (and none is

relevant here).[1] *Id.* The Eleventh Amendment thus easily disposes of this case even accepting (incorrectly) Plaintiffs' assumption that Senator Jackson engaged in state action.

**B. On Plaintiffs' Theory, Legislative Immunity Independently Bars the Official- and Individual-Capacity Claims.**

The same is true under the rubric of legislative immunity. "It is well established that state legislatures acting within the scope of their legislative duties are immune from civil suits for damages." *Id.* at 954. While the courts disagree as to whether that immunity bars both official-capacity and individual-capacity claims, *see id.* at 955 (collecting cases on all sides of debate), Senator Jackson respectfully submits that Chief Judge Jackson was right to "hol[d] that legislative immunity bars not only [] claims for damages against state legislators in their personal capacity, but also precludes [] claims seeking prospective and injunctive relief against state legislators in their official capacities." *Id.*

Here (to recount what was repeated above), Plaintiffs' § 1983 claims are viable only if Senator Jackson engaged in state action—*i.e.*, that she was "acting within the scope of [her] legislative duties." *Id.* at 954. Indeed, Plaintiffs must advance that argument to try to invoke § 1983. But the more they do so, the more they walk into the domain of legislative immunity. On Plaintiffs' own account, therefore, the Court can simply hold that Plaintiffs have argued themselves into legislative immunity and judgment as a matter of law in Senator Jackson's favor.

---

[1] As *Hall* explains, one commonly used exception is *Ex parte Young*, which in certain circumstances "permit[s] suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute." 974 F. Supp. 2d at 953. As that description suggests, *Ex parte Young* is entirely irrelevant here. And for the same reason, Plaintiffs cannot legally press a § 1983 claim against Senator Jackson in her official capacity. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

### C.  Qualified Immunity Independently Bars the Individual-Capacity Claims.

Finally, and in all events, Plaintiffs have no way around Senator Jackson's qualified immunity, even assuming all of their arguments and evidence in their favor (including that Senator Jackson allegedly engaged in state action). "Qualified immunity shields a[] [state official] from liability if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see, e.g.*, *Walker v. Schult*, 45 F.4th 598, 617 (2d Cir. 2022) ("[E]ven an award of nominal damages would be foreclosed if Defendants are entitled to qualified immunity."). "To overcome qualified immunity," a plaintiff "must show that [the defendant] (1) violated a constitutional right and (2) that the right at issue was clearly established at the time of the alleged misconduct." *Ramirez*, 44 F.4th at 291 (cleaned up).

This analysis is easy here: Assume *arguendo* that Plaintiffs established that Senator Jackson violated their First Amendment rights (although she did not, *see infra* Section III.B) by blocking them on Twitter. Plaintiffs would *still* need to show that this alleged First Amendment violation was "clearly established" by 2013 (for Sherman) and by 2022 (for Detiege). That is an impossible burden for them to carry. "The clearly established inquiry is demanding"—it requires that "existing precedent [] squarely govern the specific facts at issue, such that only someone who is plainly incompetent or who knowingly violates the law would have behaved as the official did." *Ramirez*, 44 F.4th at 292 (cleaned up). And not just any precedent: The specific facts must be directly addressed and clearly established by *Supreme Court* precedent, or (maybe) *Fifth Circuit* precedent. *See id.* at 293 ("[T]he plaintiffs' argument requires us to assume that Fifth Circuit precedent alone can clearly establish the law for qualified immunity purposes, something the

15

Supreme Court has left open.").[2] "[T]he plaintiff," moreover, "has the burden" to show as much. *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023).

Plaintiffs cannot carry that burden. For, as of 2022 (and certainly as of 2013), there was no Supreme Court or Fifth Circuit precedent holding that a state legislator violates random Twitter users' First Amendment rights by blocking them. This is best demonstrated by the Supreme Court's *Lindke* decision in 2024. *See infra* Section III.A. The whole point of *Lindke* was that it was unclear whether and when a plaintiff even has a cause of action under § 1983 to bring a lawsuit regarding the deletion of social-media posts or blocking of users. It goes without saying, therefore, that the Supreme Court plainly has never considered the second-level question whether and when those actions violate the First Amendment. The same is true of the Fifth Circuit. As best Senator Jackson can tell, as late as 2023 the Fifth Circuit has avoided any merits decisions in even marginally similar cases. *See Kallinen v. Newman*, 2023 WL 2645555, at *4 (5th Cir. Mar. 27, 2023) (holding that plaintiff had not shown that the official engaged in state action and thus "we need not reach the question of applicability of qualified immunity"); *Robinson v. Hunt Cnty.*, 921 F.3d 440, 448, 452 (5th Cir. 2019) (permitting only municipal-liability claim to proceed on "assum[ption]" that County Facebook page was "a forum subject to First Amendment protection," and thus expressly avoiding qualified-immunity inquiry).

Because Plaintiffs cannot carry their burden to show that Senator Jackson violated their clearly established First Amendment rights, Senator Jackson is entitled to qualified immunity.

---

[2] This open issue is beside the point in this case because Plaintiffs have no on-point Supreme Court or Fifth Circuit precedent. For preservation purposes, however, Senator Jackson respectfully submits that Fifth Circuit precedent alone cannot clearly establish the law for qualified-immunity purposes. *See Ramirez*, 44 F.4th at 293 n.9.

III.    **In All Events, Plaintiffs Have No Viable First Amendment Claim.**

For the foregoing reasons, the Court need not reach the merits of this case. Out of an abundance of caution, however, Senator Jackson alternatively briefs why Plaintiffs' lawsuit fails even on the merits. *First*, they have no cause of action under § 1983 because Senator Jackson did not engage in state action as defined by the Supreme Court in *Lindke*. *Second*, and in any event, Senator Jackson also did not violate Plaintiffs' First Amendment rights. Even if the Court reached the merits, therefore, Senator Jackson remains entitled to judgment as a matter of law.

A.  **Plaintiffs Have No Cause of Action Under § 1983.**

The Court need not reach the merits of the First Amendment issue because Plaintiffs lack any cause of action to begin with under *Lindke*.

1.  ***Lindke* articulates the governing standard.**

The Supreme Court's recent decision in *Lindke* dictates the outcome in this case. There, Kevin Lindke commented on the public Facebook page of James Freed, the city manager of Port Huron, Michigan, regarding the city's response to the COVID-19 pandemic. 601 U.S. at 191–93. Lindke expressed his belief that the city's pandemic response was "abysmal" and that "the city deserves better." *Id.* at 193. In response, Freed deleted Lindke's comments and later blocked Lindke from his Facebook page. *Id.* As a result, Lindke, like Plaintiffs here, sued Freed under § 1983, alleging that Freed violated his First Amendment rights. *See id.*

When Lindke's case reached the Supreme Court, the sole issue presented was the threshold cause-of-action question: whether, in deleting Lindke's comments and blocking him, Freed engaged in "state action" that implicates the § 1983 cause of action. The Supreme Court acknowledged a circuit split on the issue of "state action in the social-media context" and thus clarified the appropriate test. *Id.* at 194. First, the Court reiterated that "state action" is an essential element of any § 1983 claim—and as a corollary, § 1983 only "protects against acts attributable to

17

a State, not those of a private person." *Id.* Next, the Court noted that, on occasion, "the line between private conduct and state action is difficult to draw." *Id.* And the question can be especially difficult "in a case involving a state or local official who routinely interacts with the public." *Id.* at 196. Because "[s]uch officials may look like they are always on the clock," it is "tempting to characterize every encounter as part of the job." *Id.* However, "such broad-brush assumptions" are improper: "While public officials can act on behalf of the State, they are also private citizens with their own constitutional rights." *Id.*

Underscoring this dichotomy, the Supreme Court emphasized that Freed, as a public official, "did not relinquish his First Amendment rights when he became city manager." *Id.* Rather, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* at 196–97 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). "This right includes the ability to speak about 'information related to or learned through public employment,' so long as the speech is not 'itself ordinarily within the scope of [the] employee's duties.'" *Id.* at 197 (quoting *Lane v. Franks*, 573 U.S. 228, 236 (2014)).

Taking these principles together, the Supreme Court held that state officials' conduct constitutes state action on social media only if (1) the official "possessed actual authority to speak on the State's behalf," *and* (2) the official "purported to exercise that authority when [they] spoke on social media." *Id.* at 198. "The appearance and function of the social-media activity are relevant at the second step, but they cannot make up for a lack of state authority at the first"—in other words, a failure to prove Step One is fatal to a plaintiff's § 1983 claim. *Id.* The Supreme Court further emphasized that "the state-action doctrine demands a fact-intensive inquiry," especially in the context of social media where "the line [between personal and official communication] is often blurred." *Id.* at 197. Finally, in summarizing its opinion, the Supreme Court underscored that this

18

analysis turns on the specific subject and posts in question: "The state-action doctrine requires Lindke to show that Freed (1) had actual authority to speak on behalf of the State *on a particular matter*, and (2) purported to exercise that authority *in the relevant posts*." *Id.* at 204 (emphases added). Rather than apply this test in the first instance, however, the Court remanded to the court of appeals for further proceedings. *Id.*

### 2. Plaintiffs fail *Lindke* Step One, since Senator Jackson Lacks Authority to Speak for the State.

That test is easily applied here—and Step One resolves the issue: No state action exists (and thus, Plaintiffs have no cause of action under *Lindke*) because Senator Jackson has no "actual authority to speak on behalf of the State on a particular matter" in the relevant posts. *Id.* The Supreme Court clarified that "actual authority" here hearkens back to the "potential sources" listed in § 1983—"statute, ordinance, regulation, custom, or usage." *Id.* at 200. That is where "the power [must] come from." *Id.*; *see id.* at 198 ("An act is not attributable to a State unless it is traceable to the State's power or authority."). Put otherwise, "[i]f the State did not entrust [Senator Jackson] with [publishing her posts], it cannot 'fairly be blamed' for the way [she did so]." *Id.* at 199.

Here, no statute, ordinance, or other source of law empowers a senator to speak for the State, through social media or otherwise. Plaintiffs do not even attempt to point to any such law or grant of power—nor could they. As the Louisiana Constitution explains, the Legislature acts as a body. *See* La. Const. Ann. art. III, § 1(B) ("The legislature is a continuous body during the term for which its members are elected.").

Nor would Plaintiffs get anywhere by claiming that there is some sort of "custom or usage" pursuant to which senators speak on the State's behalf. For one thing, no such evidence appears in the deposition transcripts. For another, Plaintiffs would have to show that, for example, prior senators "have purported to speak on [the State's] behalf and have been recognized to have that

19

authority for so long that [their] power to do so has become 'permanent and well settled.' " *Lindke*, 601 U.S. at 200; *see id.* at 201 ("longstanding custom to speak for the State"). With all due respect, it would be preposterous to suggest that any such permanent and well-settled custom exists. And for yet another thing, that the Louisiana Senate and House chambers have *their own* Twitter accounts—which speak for those bodies and which individual members are not permitted to operate—reinforces that there is no custom establishing that a senator may speak for the State. *See* Ex. A at 126:22–24 ("We don't control the House or the Senate social media accounts nor can we post on them."); *id.* at 228:14–16 ("[T]he State and the Senate have those official Twitter pages that speak for the State Senate and the State House.").

Because Plaintiffs cannot point to any evidence of "actual authority rooted in written law or longstanding custom to speak for the State," *Lindke*, 601 U.S. at 201, the Court's analysis can and should end at Step One.

### 3. Plaintiffs fail *Lindke* Step Two, since Senator Jackson did not purport to exercise the State's authority in the relevant posts.

Even if Senator Jackson had authority to speak for the State, she did not purport to exercise State-sanctioned authority while speaking on Twitter here. "State officials have a choice about the capacity in which they choose to speak." *Id.* And a public official chooses to speak on the State's behalf only "while speaking 'in [her] official capacity or' when [she] uses [her] speech to fulfill '[her] responsibilities pursuant to state law.' " *Id.* (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988)). Where "the public employee does not use [her] speech in furtherance of [her] official responsibilities, [she] is speaking in [her] own voice." *Id.* Context matters at Step Two—and it is dispositive here.

*First*, Senator Jackson's Twitter account is unequivocally her "personal page," Ex. A at 162:2–5; it is not an official page for the State, the Louisiana Senate, or even the 34th District. To

be sure, it does not bear a "this is a personal page" label. *Lindke*, 601 U.S. at 202. But any reasonable observer of the Senator's repeated personal posts and inspirational messages—together with her profile and cover photos—would recognize that this is a personal page. *See supra* pp. 3–4; *see, e.g.*, Ex. B-1–20. And that is enough to "safely presume" that speech on her Twitter account "is personal (absent significant evidence indicating that a post is official)." *Lindke*, 601 U.S. at 202.

*Second*, Plaintiffs at most might claim that Senator Jackson's Twitter page is "mixed use"—"a place where [she] made some posts in [her] personal capacity and other in [her] capacity as" state senator. *Id.* But that would require Plaintiffs to categorize the posts at issue via "a fact-specific undertaking in which the post's content and function are the most important considerations." *Id.* at 203. Importantly, "[h]ard-to-classify cases require awareness that an official does not necessarily purport to exercise his authority simply by posting about a matter within it." *Id.*

In this case, however, that classification exercise would be easy. The abortion-law posts that triggered Detiege's racist and profane assault on Senator Jackson (and thus the block on Detiege) unquestionably did not purport to exercise the State's authority. They simply highlighted existing Louisiana law—something the Supreme Court expressly noted is insufficient to constitute state action. *See id.* ("If, by contrast, the mayor merely repeats or shares otherwise available information—for example, by linking to the parking announcement on the city's webpage—it is far less likely that he is purporting to exercise the power of his office."). In this way, Senator Jackson was no different than a hypothetical school board president who, "at a backyard barbecue with friends whose children attend public schools, [ ] shares that the board has lifted [ ] pandemic-era restrictions." *Id.* at 201. Just as that is a "private action taken in his personal capacity as a friend

and neighbor," *id.* at 202, so too Senator Jackson's observation about existing Louisiana law was private action taken in her personal capacity.

In fact, the same would be true even of those posts where Senator Jackson urged the public to call senators to vote "yes" or "no" on certain bills. By definition, a post asking the public to pressure their own representatives admits that Senator Jackson herself does not have the unilateral authority of the Senate, let alone the State, to achieve her goal. That is not state action.

Because Senator Jackson lacked authority to speak on the State's behalf, and at the very least did not purport to exercise any such authority, Plaintiffs have no cause of action under § 1983, and Senator Jackson is entitled to judgment as a matter of law on Plaintiffs' claims.

### B. Senator Jackson Did Not Violate Plaintiffs' First Amendment Rights.

In all events, a quick glance at the substantive First Amendment question reinforces that summary judgment for Senator Jackson is proper. The Complaint asserts that Senator Jackson's Twitter account "is a public forum subject to First Amendment protection." Am. Compl. ¶ 77. Resolving that issue is an important first step in the First Amendment analysis because it dictates the framework of the rest of the analysis. But Plaintiffs' vague assertion betrays that they (understandably) do not know how to frame up the supposed "public forum."

"There are two broad categories of forums: (1) traditional and designated public forums and (2) limited public forums and nonpublic forums." *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 426 (5th Cir. 2020). "Traditional public forums are places such as sidewalks, streets, and parks that have traditionally been devoted to assembly or debate." *Id.* "Designated public forums are places that the government has designated for the same widespread use as traditional public forums." *Id.* "Limited public forums are places that the government has opened for public expression of particular kinds or by particular groups." *Id.* And "[n]onpublic forums are forums that are not open for public communication by tradition or designation." *Id.*

Right off the bat, it is clear that Senator Jackson's Twitter account is not a traditional public forum because it is nothing like a sidewalk, street, or park. Similarly, it is not a limited public forum because there is no evidence that Senator Jackson opened it for particular kinds of expression by particular groups. And it also is not a designated public forum because there is no evidence that Senator Jackson designated it "for the same widespread use as traditional public forums." *Id.*

So, at most, her account might be considered a nonpublic forum. And "[t]he government can restrict speech in a ... nonpublic forum as long as the restriction is (1) reasonable in light of the purpose served by the forum and (2) does not discriminate against speech on the basis of viewpoint." *Id.* at 426–27. The Senator's narrowly tailored blocking of Detiege because of her vitriol was, of course, eminently reasonable given Senator Jackson's efforts to keep her Twitter account free of racism and profanity. And for the same reason, blocking Detiege for her "burn in hell" and "dumb Black bitch" attacks is not viewpoint discrimination in any sense of that term. *See, e.g.*, *Iancu v. Brunetti*, 588 U.S. 388, 401 (2019) (Roberts, C.J., concurring in part and dissenting in part) ("The First Amendment protects the freedom of speech; it does not require the Government to give aid and comfort to those using obscene, vulgar, and profane modes of expression."); *see also id.* at 397 (maj. op.) (declining to address the government's argument that a restriction based on profane language "would not turn on viewpoint, and so we could uphold it"). As a result, even on the merits of the First Amendment issue, Senator Jackson is entitled to judgment as a matter of law.

## CONCLUSION

The Court should grant summary judgment in Senator Jackson's favor and dismiss Plaintiffs' claims with prejudice.

Dated: January 6, 2025                    Respectfully submitted,


                                             /s/ Caitlin Huettemann
                                          CAITLIN HUETTEMANN (La #40402)
                                            *Assistant Solicitor General*
                                          OFFICE OF THE LOUISIANA ATTORNEY GENERAL
                                          1885 North Third Street
                                          Baton Rouge, LA 70804
                                          Telephone: (225) 326-6766
                                          Facsimile:   (225) 326-6795
                                          huettemannc@ag.louisiana.gov

                                          BY: */s/ Thomas M. Hayes, IV*
                                          Thomas M. Hayes, IV (La # 28600)
                                          HAMMONDS, SILLS ADKINS, GUICE,
                                          NOAH & PERKINS, L.L.P.
                                          1500 N. 19th Street, Suite 301
                                          Monroe, Louisiana 71201
                                          Telephone: (318) 324-0101
                                          Facsimile: (318) 322-5375
                                          Email: thayes4@hamsil.com

                                          *Counsel for Defendant Katrina Jackson*