UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| MAYA DETIEGE and DAYNE SHERMAN, | CIVIL ACTION NO.: 3:23-cv-175 |
| *Plaintiffs* | |
| *v.* | JUDGE WALTER |
| KATRINA JACKSON, in her official and individual capacities, | MAGISTRATE JUDGE MCCLUSKY |
| *Defendant.* | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# I.    <u>Table of Contents</u>

I.    Table of Contents .................................................................................................... ii

II.    Table of Authorities .............................................................................................. iii

III.    Facts ...................................................................................................................... 1

IV.    Summary of the Argument ..................................................................................... 1

V.    Argument ............................................................................................................... 1

   1.    Defendant is not entitled to summary judgment on Plaintiff Sherman's claims ........ 1

     a.    Plaintiff Sherman has Article III standing ................................................ 1

       i.    Sherman has standing for his injunctive claims .................................. 2

       ii.    Sherman has standing for his declaratory claims ............................... 5

       iii.    Plaintiff's motivations for bringing suit do not negate Article III standing........ 6

     b.    Plaintiff Sherman's claims are not time-barred ....................................... 8

   2.    Defendant is not entitled to immunity for Plaintiffs' claims..................................... 12

     a.    Eleventh Amendment Immunity .............................................................. 12

     b.    Legislative Immunity .............................................................................. 14

     c.    Qualified Immunity................................................................................. 17

   3.    Defendant violated Plaintiffs' First Amendment rights ............................................ 22

     a.    Defendant's Twitter account is a designated public forum..................... 22

     b.    Defendant engaged in viewpoint discrimination against Plaintiffs ...................... 23

     c.    Defendant's conduct is state action........................................................ 25

       i.    Defendant has actual state authority to speak .................................. 25

       ii.    Defendant purported to exercise her authority on Twitter ................ 28

VI.    Conclusion ........................................................................................................... 34

## II.    Table of Authorities

**Cases**

Adarand Constructors, Inc. v. Slater, 528 U.S. 216 (2000)...............................................4

Almonte v. City of Long Beach, 478 F.3d 100 (2d Cir. 2007)........................................16

Andrews v. Adams, No. 23-50841, 2024 WL 4298150 (5th Cir. Sept. 26, 2024) ........15

Ashcroft v. al-Kidd, 563 U.S. 731 (2011) .....................................................................18

Attwood v. Clemons, 818 Fed. App'x 863 (11th Cir. 2020)......................... 14, 17, 26, 27

Biden v. Knight First Amend. Inst. At Columbia Univ., 141 S. Ct. 1220, 209 L. Ed. 2d 519
  (2021)........................................................................................................................9

Brown v. Pouncy, 93 F.4th 331 (5th Cir. 2024) .............................................................8

Cinevision Corp. v. City of Burbank, 745 F.2d 560 (9th Cir. 1984)........................16, 26

Clark v. Kolkhorst, No. 1:19-CV-198-LY, 2021 WL 5783210 (W.D. Tex. Dec. 7, 2021) ...........26

Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655 (5th Cir. 2006)....................3

Cutting v. Muzzey, 724 F.2d 259 (1st Cir.1984) ...........................................................15

Davis v. Passman, 544 F.2d 865 (5th Cir. 1977) ..........................................................16

Dougherty v. Cnty. of Vermillion,No. 2:22-CV-00579-JPH-MJD, 2024 WL 3510214 (S.D. Ind.
  July 23, 2024)........................................................................................................26, 27

Evans v. Herman, No. 4:22-CV-2508, 2023 WL 4188347 (S.D. Tex. Apr. 24, 2023).................21

Fairchild v. Liberty ISD, 597 F.3d 747 (5th Cir. 2010)..................................................3

FDA v. All. for Hippocratic Med., 602 U.S. 367 (2024) ......................................... passim

Fed. Bureau of Investigation v. Fikre, 601 U.S. 234 (2024)...........................................4

Fox v. Faison, 668 F. Supp. 3d 751 (M.D. Tenn. 2023)................................................27

Freedom From Religion Foundation v. Abbott, 955 F.3d 417 (5th Cir. 2020) .......... 13, 14

Freedom Path, Inc. v. I.R.S., 913 F.3d 503 (5th Cir. 2019).............................................3

Funding Sys. Leasing Corp. v. Pugh, 530 F.2d 91 (5th Cir.1976) ...................................8

Gravel v. United States, 408 U.S. 606 (1972) ..............................................................15

Hearn v. McCraw, 856 F. App'x 493 (5th Cir. 2021) ....................................................10

Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll., 850 F.3d 731 (5th Cir. 2017)
  .............................................................................................................................10, 12

Houston Chronicle v. City of League City, 488 F.3d 613 (5th Cir. 2007) .......................3

Hughes v. Tarrant Cnty., 948 F.2d 918 (5th Cir. 1991)............................................15, 16

Hutchinson v. Proxmire, 443 U.S. 111 (1979) .........................................................16, 17

Iancu v. Brunetti, 588 U.S. 388 (2019) ...................................................................23, 24

Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) .......................................................15

Kallinen v. Newman, 2023 WL 2645555 (5th Cir. Mar. 27, 2023) ...............................21

Knight First Amend. Inst. at Columbia Univ. v. Trump, 928 F.3d 226 (2d Cir. 2019)................9

Lamb's Chapel v. Ctr Moriches Union Free Sch., 508 U.S. 384 (1993) .................... 20, 24

Latiolais v. Griffith, No. CIV.A. 09-0018, 2011 WL 1238315 (W.D. La. Mar. 30, 2011)...........26

Lebouef v. Island Operating Co., 342 F. App'x 983 (5th Cir. 2009) ...............................8

Lindke v. Freed, 601 U.S. 187 (2024)................................................................... passim

Louisiana v. Hall, 974 F. Supp. 2d 944 (M.D. La. 2013)........................................................ 13, 17
Mackey v. Rising, 106 F.4th 552 (6th Cir. 2024)....................................................................... 26
Matal v. Tam, 137 U.S. 1744 (2017)................................................................................... 23, 24
Med Care Emergency Med. Servs., Inc. v. City of Pharr, No. 7:21-CV-445, 2025 WL 209428 (S.D. Tex. Jan. 13, 2025).............................................................................................. 15
Meza v. Livingston, 607 F.3d 392 (5th Cir. 2010) ...................................................................... 4
Minton v. St. Bernard Parish Sch. Bd., 803 F.2d 129 (5th Cir. 1986)........................................ 15
Nat'l R.R. Passenger Corp. V. Morgan, 536 U.S. 101 (2022)..................................................... 12
Packingham v. North Carolina, 582 U.S. 98 (2017). ................................................... 20, 22, 28
Pearson v. Callahan, 555 U.S. 223 (2009) ................................................................................ 18
Pegram v. Honeywell, 361 F.3d 272 (5th Cir. 2004)................................................................. 10
Pinkhasov v. Vernikov, No. 1:23-CV-3460 (OEM) (SJB), 2024 WL 2188356 (E.D.N.Y. May 15, 2024) ................................................................................................................... 26, 27
Police Dept. of Chicago v. Mosley, 408 U.S. 92 (1972)........................................................ 20, 24
Powell v. McCormack, 395 U.S. 486 (1969)................................................................................. 5
Ramirez v. Escajeda, 44 F.4th 287 (5th Cir. 2022) ................................................................... 18
Reed v. Town of Gilbert, 576 U.S. 155 (2015) ......................................................................... 24
Robinson v. Hunt Cnty., 921 F.3d 440 (5th Cir. 2019) ....................................................... passim
Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819 (1995) .............................. 20, 24
Shumpert v. City of Tupelo, 905 F.3d 310 (5th Cir. 2018) ........................................................ 18
Speech First, Inc. v. Fenves, 979 F.3d 319 (5th Cir. 2020)................................................. 2, 3, 4
Susan B. Anthony List v. Driehaus, 573 U.S. 479 (2014) ........................................................... 2
Texas v. United States, 891 F.3d 553 (5th Cir. 2018) ............................................................... 10
Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622 (1994)............................................ 20, 24
United States v. Brewster, 408 U.S. 501 (1972)........................................................................ 15
United States v. W. T. Grant Co., 345 U.S. 629 (1953) ............................................................... 4
West v. Atkins, 487 U.S. 42 (1988).......................................................................................... 29

**Rules**

Fed. R. Civ. P. 7(a) ................................................................................................................... 8
Fed. R. Civ. P. 8(c). ............................................................................................................. 8, 15

## III.     Facts

Defendant's Motion for Summary Judgment is rife with factual inaccuracies. Plaintiffs address these problems in the Statement of Disputed Facts filed herewith.

## IV.     Summary of the Argument

This is a case about the fundamental right to dissent from government action without being silenced. Defendant's motion raises many defenses, none of which successfully relieve her of liability for violating Plaintiffs' First Amendment rights. The facts are clear: Defendant created a designated public forum and then engaged in viewpoint discrimination by blocking Plaintiffs from accessing that forum. Defendant was acting under color of law when she blocked Plaintiffs, which constitutes state action under Supreme Court precedent. As such, this Court should deny Defendant's Motion for Summary Judgment.

## V.     Argument

### 1.  Defendant is not entitled to summary judgment on Plaintiff Sherman's claims

Defendant claims that she is entitled to judgment as a matter of law on Plaintiff Sherman's First Amendment claims. Defendant is wrong, and her motion should be denied.

### a.  Plaintiff Sherman has Article III standing

To have standing to sue in federal court a plaintiff must "demonstrate (i) that [he] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief."[1] Mr. Sherman satisfies the requirements because (i) his constitutional rights were violated[2]

---

[1] FDA v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024).
[2] See Pls.' Mem. Supp. Mot. Summ. J. 24-25, ECF No. 52-3.

(ii) by Defendant Jackson through her actions on Twitter,[3] and (iii) he seeks to redress that injury.[4] He seeks declaratory and injunctive relief to prevent Defendant from re-blocking him in the future.[5] He also seeks nominal and compensatory damages, in her individual capacity only.[6] Defendant's arguments as to why Mr. Sherman lacks Article III standing all fail under scrutiny.

As a threshold matter, Defendant's argument that there is no injury in fact because Mr. Sherman is not currently blocked on Twitter fails because Defendant violated Mr. Sherman's constitutional rights by blocking him for years.[7] A rights violation was committed every time she engaged in state action on Twitter, until she unblocked Mr. Sherman after the institution of this lawsuit in 2023.[8] He has sustained injury-in-fact sufficient to confer standing under Article III.[9]

i. *Sherman has standing for his injunctive claims*

Defendant next argues that Sherman lacks Article III standing to seek injunctive relief because there is not sufficient likelihood of future harm to Mr. Sherman, as Defendant has unblocked him. This is wrong. A plaintiff has standing to seek prospective relief "if he (1) has an 'intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) his intended future conduct is 'arguably ... proscribed by [the policy in question],' and (3) 'the threat of future enforcement of the [challenged policies] is substantial.'"[10]  Because this is a First Amendment case, the likelihood of future injury is met due to the chilling effect on Plaintiff's

---

[3] See id.
[4] First Am. Compl. 24-25, ECF No. 19.
[5] Id.
[6] Id.
[7] See Pls.' Mem. Supp. Mot. Summ. J. 24-25, ECF No. 52-3.
[8] Ex. 1, Supp. Sherman Decl. at ¶ 6. See Lindke v. Freed, 601 U.S. 187, 204 (2024) (noting that "[b]ecause blocking operate[s] on a page-wide basis, a court would have to consider whether [Defendant] had engaged in state action with respect to any post on which [Plaintiff] wished to comment"). The language of Lindke explains that each post made while Mr. Sherman was blocked is a separate violation.
[9] All. for Hippocratic Med., 602 U.S. at 380.
[10] Speech First, Inc. v. Fenves, 979 F.3d 319, 330 (5th Cir. 2020) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 479, 161–64 (2014)).

speech.[11] The Fifth Circuit explains, "[i]t is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech."[12]

First, Mr. Sherman uses Twitter for about "75 percent" of his political activity.[13] He tweets about politics, and in fact continued tweeting about Defendant's legislation several times after he was blocked.[14] He intends to continue to engage Defendant in political debate on Twitter.[15] He has an "intention to engage in future conduct that is affected with a constitutional interest," as articulated by *Fenves*.[16] Defendant has committed to continuing a blocking standard that she enforces arbitrarily against people who engage in criticism of her.[17] Plaintiffs' evidence shows that merely disagreeing with her policies is enough to earn a block from her account.[18] Sherman's future conduct is proscribed by her arbitrary viewpoint policies and the threat of enforcement is substantial.

Most importantly, in evaluating standing in a pre-enforcement context for a First Amendment claim, the Fifth Circuit has repeatedly held that "[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement."[19] Sherman's standing in this case is even more clear than that in *Fenves*, because he has already been silenced once, and

---

[11] Id. at 330-31.

[12] Id. at 331 (quoting Houston Chronicle v. City of League City, 488 F.3d 613, 618 (5th Cir. 2007)); see also Freedom Path, Inc. v. I.R.S., 913 F.3d 503, 507 (5th Cir. 2019); Fairchild v. Liberty ISD, 597 F.3d 747, 754–55 (5th Cir. 2010); Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655, 660 (5th Cir. 2006) ("As the district court noted, '[t]he First Amendment challenge has unique standing issues because of the chilling effect, self-censorship, and in fact the very special nature of political speech itself.' ").

[13] Ex. 2, Sherman Dep. 21:13-15.

[14] Exs. 3-14, (showing tweets from Sherman while he was blocked, relating to Defendant Jackson or her legislation.).

[15] Ex. 1, Supp. Sherman Decl. ¶ 4.

[16] Speech First, 979 F.3d at 330.

[17] Ex. 16, Jackson Dep. 282: 11-15 ("It's on a case by case basis…I keep saying it's on a case by case basis because that's how I judge things—on a case by case basis."), ECF No. 52-19.

[18] Pls.' Mem. Supp. Mot. Summ. J. 11-13, 28, ECF No. 52-3 (discussing Defendant's documented history of blocking dissenting voices); Ex. 68, ECF No. 54-1; Ex. 71, ECF No. 54-2; Ex. 72, ECF No. 54-3; Ex. 73, ECF No. 54-4; Ex. 74, ECF No. 54-5; Ex. 75, ECF No. 54-6.

[19] Speech First, 979 F.3d at 330-31.

was only unblocked as a result of this lawsuit. It is very likely that Mr. Sherman's criticism of Defendant will earn him a block after the conclusion of this suit. But it is certain that Sherman will censor himself in an attempt to avoid being blocked.[20] And Fifth Circuit law is clear that the chilling effect confers standing for exactly a challenge such as this.[21]

Finally, because Defendant's brief is unclear on her exact argument, Plaintiffs simply note that in addition to retaining standing, his case also remains a justiciable "case or controversy" under Article III and is not moot. "In general, '"a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," even in cases in which injunctive relief is sought.'"[22]  "'[V]oluntary cessation of challenged conduct' moots a case 'only if it is "*absolutely* clear that the allegedly wrongful behavior could not be reasonably expected to recur."'"[23]  It is Defendant who bears the "formidable burden" of proving there is no reasonable expectation that she will "return to [her] old ways."[24] Although she unblocked users in response to this suit, Jackson maintains her blocking policies. Her unconstitutional conduct is continuing to occur, and the case is not moot.

Defendant also has shown that she is reactionary toward parties to this lawsuit and their counsel. After being served with this lawsuit, she unblocked everyone from her Twitter account, including both Plaintiffs.[25] Upon learning that she accidentally unblocked the (then) only plaintiff in this lawsuit, Defendant re-blocked that account—knowing at that point all of the details in the complaint, including that Ms. Detiege is a real person, and is a Black woman in Louisiana who

---

[20] Ex. 1, Sherman Decl. ¶ 8.
[21] Speech First, 979 F.3d at 330–31.
[22] Id. at 328 (quoting Meza v. Livingston, 607 F.3d 392, 399-400 (5th Cir. 2010)) .
[23] Id. (quoting Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000).
[24] Fed. Bureau of Investigation v. Fikre, 601 U.S. 234, 241 (2024) (quoting United States v. W. T. Grant Co., 345 U.S. 629, 632-33 (1953)).
[25] Ex. 15, Jackson Dep. 341:7-25—342:10.

disagreed with her policies.[26] In addition, after learning that this suit was brought by the First Amendment Clinic at Tulane University, Defendant Jackson contacted Tulane University, ostensibly to "make sure state funding was not being used to sue on this issue."[27] During that call, Defendant advised Tulane University officials that she was considering a protest of the University on the steps of the Capitol by the Black Legislative Caucus as a result of this lawsuit.[28]

Mr. Sherman has Article III standing because her policy has an ongoing chilling effect on his speech, sufficient to confer imminent injury under clearly established Fifth Circuit law. Defendant's policy remains in place, and Mr. Sherman is entitled to equitable relief.[29] He also has standing to seek compensatory and nominal damages against Jackson in her individual capacity for the actual injuries of his blocking until 2023.[30]

### ii.    *Sherman has standing for his declaratory claims*

Finally, this Court should find that Mr. Sherman has standing for his prayer of declaratory relief. The Fifth Circuit, in *Robinson v. Hunt County*, held that "[a] party may pursue both injunctive and declaratory relief, and '[a] court may grant declaratory relief even though it chooses not to issue an injunction or mandamus.'"[31] There, a social media user sought injunctive, declaratory, and compensatory relief after she was blocked from an official government Facebook

---

[26] Id. 344:5-9.

[27] Id. 400:19-21; see also id. 399:17-20 ("Q: After this lawsuit was filed, you contacted officials at Tulane University, correct? A: Right. Because I believe – I thought that their funding was for this Clinic."); id. 399:22—400:1 ("[W]e do provide scholarships, so that—that does, by way of scholarships, give state funding— and I ask[ed] was state funding being used to fund a clinic that sues people and they said, no."). At the time this lawsuit was filed, Defendant Jackson served as the Vice-Chair of the Senate Standing Committee on Education. Ex. 16, Def. Resp. to Pls Interrog. No. 18. Defendant Jackson emphasized that she called Tulane to ensure that the "Clinic was ethically funded." Ex. 15, Jackson Dep. 401:10, 401:3, 402:3, 402:21.

[28] Ex. 15, Jackson Dep. 402:7-11 ("Q: At the time, did you advise Tulane that you were considering a protest of the university by the Black Legislative Caucus as a result of this lawsuit? A: Yes.").

[29] See All. for Hippocratic Med., 602 U.S. at 380.

[30] First Am. Compl. 24-25, ECF No. 19.

[31] Robinson v. Hunt Cnty., 921 F.3d 440, 450 (5th Cir. 2019) (quoting Powell v. McCormack, 395 U.S. 486, 499 (1969)).

account.[32] The *Robinson* court emphasized that declaratory relief is distinct from both injunctive and compensatory relief, especially in constitutional cases.[33] This Court should grant declaratory relief to Mr. Sherman independent of the disposition of his other claims. Defendant Jackson did not argue that Mr. Sherman does not have standing to seek declaratory relief. This Court must find that Mr. Sherman retains his Article III standing for that relief.

> iii.    *Plaintiff's motivations for bringing suit do not negate Article III standing*

Mr. Sherman has suffered injury-in-fact and his Article III standing is not impacted by his motivations in filing this lawsuit. Defendant argues that because Mr. Sherman stated during deposition that a motivation for filing this lawsuit was to show that elected officials cannot block citizens, he has forfeited his claims for relief. That argument is unsupported by law.  Mr. Sherman's motivation is to protect the First Amendment rights of citizens. That is a noble and important reason for bringing suit, particularly where the suit subjects one to the wrath of a state senator and mocking by the state attorney general.[34] Wanting to protect constitutional rights does not negate Article III standing.[35]

Defendant Jackson misreads the Supreme Court precedent she cites in her own support. The full quote provides that there is no standing only if there is no injury in fact: "*By requiring the plaintiff to show an injury in fact*, Article III standing screens out plaintiffs who might have *only* a general legal, moral, ideological, or policy objection to a particular government action."[36] As discussed above, *supra* notes 7-9*,* Sherman has suffered an injury in fact and has more than "only

---

[32] Id. at 445-46.
[33] Id. (noting that the Declaratory Judgment Act, which allowed courts to issue declaratory judgments, "was 'expressly designed to provide a milder alternative to the injunction remedy'" and that a court could still choose to award declaratory relief even if it does not award injunctive relief.
[34] Ex. 17 (Attorney General tweet misquoting Plaintiff Detiege).
[35] See All. for Hippocratic Med., 602 U.S. at 380.
[36] Id. at 381 (emphasis added).

a general legal, moral, ideological, or policy objection" to Defendant's actions—he suffered an abridgment of his constitutional rights and has a right to seek redress.[37]

In further support of her argument, Defendant Jackson cites Mr. Sherman's testimony that he would like to have legal precedent established.[38] This is a good purpose for litigation, where one has suffered an injury-in-fact and wants the courts to redress it so that it does not happen again. When asked if he was "looking to recover anything else," Mr. Sherman said no.[39] Defense counsel did not show him a copy of the complaint during this questioning.[40] Defendant unreasonably implies Mr. Sherman should have known the exact legal remedies contained in Plaintiffs' prayer for relief (drafted by his lawyers) and been able to recall those legal remedies on the spot.[41] Mr. Sherman testified that he does not believe that Defendant should be allowed to block citizens, including himself.[42] He also testified that his counsel drafted the prayer for relief and he did not have it on hand at the deposition.[43] Mr. Sherman has not forfeited the remedies prayed for in his complaint by failing to recite remedies on command at his deposition. And moreover, he sustained injury-in-fact, having been blocked by Defendant Jackson. Defendant cannot use Sherman's desire to protect the First Amendment against him, after denying him those rights for years. His acknowledgment of needing judicial intervention to stop an unconstitutional practice by Defendant does not negate the concrete personal harm he has unquestionably sustained. Defendant Jackson's arguments that Mr. Sherman lacks Article III standing all fail.

---

[37] Id.
[38] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 11, ECF No. 50-1.
[39] Id.
[40] Ex. 1, Supp. Sherman Decl. ¶ 12.
[41] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 11 ("But he forfeited that request in his deposition. Ex. C at 18:12-13 ('I am not seeking monetary compensation.')").
[42] Ex. 2, Sherman Dep. 17:23-25—18:1-6.
[43] Id. 10:20-24; Ex. 1, Sherman Supp. Dec. at ¶ 12.

### b. *Plaintiff Sherman's claims are not time-barred*

Next, Defendant argues that Mr. Sherman's claims are time-barred because "he waited too long to sue."[44]  Defendant has waited too long to raise this argument: statute of limitations is one of the enumerated affirmative defenses in Fed. R. Civ. P. 8(c), which states that "in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."[45] Because Defendant Jackson never filed a responsive pleading to Plaintiffs' amended complaint and a motion for summary judgment is not a responsive pleading under the Federal Rules,[46] she has waived this affirmative defense.[47] "Once the defendant has waived that defense, it 'cannot revive the defense in a memorandum in support of a motion for summary judgment.'"[48] It would be inequitable to allow Defendant to raise this defense now, as Plaintiffs were not on notice and did not develop a record on this defense in discovery. Defendant has waived this argument.

Defendant's assertion that Mr. Sherman's claims are time-barred is also substantively wrong. Defendant notes that the statute of limitations for Mr. Sherman's First Amendment claims is subject to Louisiana's one-year limit for personal injury claims.[49] Mr. Sherman's First Amendment claim accrued in April of 2013, when he was initially blocked from Jackson's page.[50] But Defendant caused Mr. Sherman continuous harm by separate but related repeated engagements in state action on Twitter while Mr. Sherman was blocked. This was a continuous infringement of his First Amendment rights, until sometime in Spring of 2023.[51]

---

[44] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 12, ECF 50-1.

[45] Fed. R. Civ. P. 8(c).

[46] Fed. R. Civ. P. 7(a).

[47] Lebouef v. Island Operating Co., 342 F. App'x 983, 984 (5th Cir. 2009) (holding that when a defendant fails to raise the affirmative defense of statute of limitations in his answer it is waived and may not be raised by the Court *sua sponte*.).

[48] Id. (quoting Funding Sys. Leasing Corp. v. Pugh, 530 F.2d 91, 96 (5th Cir.1976)).

[49] Brown v. Pouncy, 93 F.4th 331, 332 (5th Cir. 2024).

[50] Ex. 39, Sherman Decl. ¶¶ 10-15, ECF No. 52-6.

[51] Ex. 18, Sherman tweet from February 2023 ("Definitely still blocked"); Ex. 19, Sherman tweet from April of 2023 ("Jesus, Mary and Joseph! I have been unblocked from Senator Jackson!")

In *Lindke*, the Court explains that when an official engages in state action on a social media page from which a plaintiff is fully blocked, <u>every individual post</u> that is state action triggers a harm and injury to the plaintiff.[52] When someone is completely blocked from viewing a page (as Sherman was here), "a court would have to consider whether [the public official] had engaged in state action with respect to any post" on which the member of the public wished to comment,[53] because they are completely cut off from the forum and cannot access any of the user's posts.[54] Courts have recognized that "the "interactive space" associated with <u>each tweet</u> constitute[s] a public forum for First Amendment purposes because it [is] a forum "in which other users may directly interact with the content of the tweets by ... replying to, retweeting or liking the tweet."[55] Thus, each time Defendant engaged in state action on her Twitter page while Mr. Sherman remained blocked, constituted a new violation.

Defendant engaged in state action when she blocked Sherman in 2013—she, then a state representative, was actively facilitating and participating in a debate with members of the public about legislation that she was proposing—a matter clearly within her bailiwick as a state representative.[56] But, as *Lindke* makes clear, this is not the only time period relevant to the inquiry.[57] Defendant cut off Mr. Sherman's access to her Twitter page until Spring of 2023, after

---

[52] <u>Lindke v. Freed</u>, 601 U.S. 187, 204 (2024) (contrasting the analysis of deleting a user's comments on a single post with page wide blocking; "[b]locking, however, is a different story.").
[53] <u>Id.</u> (cleaned up).
[54] <u>Id.</u> (cleaned up).
[55] <u>Knight First Amend. Inst. at Columbia Univ. v. Trump</u>, 928 F.3d 226, 233 (2d Cir. 2019), <u>cert. granted, judgment vacated sub nom.</u> <u>Biden v. Knight First Amend. Inst. At Columbia Univ.</u>, 141 S. Ct. 1220, 209 L. Ed. 2d 519 (2021), and <u>abrogated by</u> <u>Lindke</u>, 601 U.S. 187.
[56] Ex. 23 (tweet thread with Sherman and Defendant about Defendant's proposed legislation), ECF No. 52-5.
[57] <u>Lindke</u>, 601 U.S. at 204.

the initiation of this lawsuit, when she unblocked him.[58] Defendant repeatedly engaged in state action on Twitter while Mr. Sherman was blocked from viewing or participating in the forum.

Defendant's official acts on Twitter while Mr. Sherman was blocked from the forum constitute continuing violations and his claims are not time-barred under that doctrine. "[T]he continuing violation doctrine is equitable in nature and extends the limitations period on otherwise time[-]barred claims,"[59] allowing a plaintiff to bring a claim that would otherwise be time-barred if he can show "the suit is nevertheless timely because continuous conduct has occurred within the limitations period."[60] When evaluating whether acts constitute continuing violations, courts consider whether the acts are the same kind and how frequently they occur.[61] Here, continuous conduct occurred because Defendant Jackson continued to engage in state action on her Twitter page while shutting out Mr. Sherman's access to the forum. Defendant's numerous tweets and tweet-replies on Twitter regarding her legislation and legislative positions are separate acts.[62] These acts occurred repeatedly and frequently.[63] They are of the same type, as they all involve Defendant actively participating in a public forum of her own making about her legislative policies and positions, while excluding members of the public, including Mr. Sherman, with whom she disagreed.[64]

---

[58] Ex. 15, Jackson Dep. 344:5-9; Ex. 1, Supp. Sherman Decl. ¶6; Ex. 18, 2023.02.14 Sherman tweet (showing he was still blocked in February 2023); Ex. 19, 2023.04.10 Sherman tweet (showing he was unblocked by April 2023).

[59] Texas v. United States, 891 F.3d 553, 562 (5th Cir. 2018) (quoting Pegram v. Honeywell, 361 F.3d 272, 279 (5th Cir. 2004)).

[60] Hearn v. McCraw, 856 F. App'x 493, 496-97 (5th Cir. 2021) ("[A] plaintiff must show that (1) there are separate-but[ ]related acts at issue; and (2) the violation is continuing.").

[61] Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll., 850 F.3d 731, 740 (5th Cir. 2017) (applying continuing violations doctrine in a hostile work environment context where the same type of actions occur frequently and Defendant does nothing to remedy the harm to break up the continuous nature of the acts).

[62] See Pls.' Mem. Supp. Mot. Summ. J. 20-23, ECF No. 52-3; Ex. 1, Bogen Report, ECF No. 52-5 (showing the frequency of Defendant's Twitter activity).

[63] Id.

[64] Id.

Not only are these acts continuing violations that occurred while Mr. Sherman was blocked, many occurred within the year prior to the filing of the amended complaint, Rec. Doc. 15, on August 21, 2023. Defendant engaged in state action on Twitter numerous times from August 21, 2022 to spring of 2023, when she finally unblocked Mr. Sherman. In October of 2022, she engaged with a Twitter user regarding the status of the Senate Select Committee on State Police Oversight, a Senate Committee on which she featured prominently.[65] In August of 2022, she frequently engaged with members of the public regarding her abortion bill and how it could and has affected access to medical care for pregnant women.[66] These acts constitute state action because Defendant was engaging and informing members of the public on matters within her bailiwick as an elected official, all while purporting to exercise her authority.[67] These tweets constitute separate harms for the purpose of *Lindke*, and because they are continuous and fall within Plaintiff's one-year statute of limitations, his claims are not time-barred. Notably, Mr. Sherman continued to speak out on Twitter regarding Defendant's actions and legislation, attempting to tweet at her and including her in his posts, illustrating the ongoing nature of the harm: while other Louisiana residents were able to directly contact the Senator and receive insight into her legislation and the actions of her office, he was not.[68]

---

[65] Ex. 20,  2022.10.21 Police Oversight tweet (showing Defendant responding to a member of the public on Twitter about her committee).

[66] See e.g., Ex. 21 2022.08.21 Misinformation tweet (Jackson: "spreading misinformation mislead others [sic] prior to my bill the 2006 trigger law was in place absent this law passing the 2006 trigger law criminalized women and had no medical futility exception[…] [sic]"); Ex. 22, 2022.08.23 Direct Contradiction tweet (Jackson: "This is not a direct contradiction the hospital wanted to perform a dismemberment abortion which is restricted by other laws, this patient procedure can be done without a dismemberment abortion."); Ex. 23, 2022.08.28 Facts Tweet (Jackson: "You are not interested in the facts because I am sure you know 35 legislators, the Attorney General and LDH drafted a letter saying she fit the exception and the hospital misinterpreted the law").

[67] Lindke, 601 U.S. at 191.

[68] Exs. 3-14 (showing Sherman tweeting about Defendant's policies while blocked); Ex. 1, Supp. Sherman Decl. ¶ 2.

Continuing violations is an equitable doctrine. Courts consider whether defendants point to any equitable reasons that the Court should not consider the full scope of continuing conduct.[69] Defendant does not. The doctrine is intended to "promote justice" by ensuring that claims are not brought when evidence has been lost, or witnesses are no longer available.[70] There is no need for concern here—the evidence objectively exists electronically and is uncontroverted. Mr. Sherman has continued to tweet about being blocked by Defendant on Twitter.[71] The record shows that Jackson unblocked multiple Twitter users because of this litigation;[72] Sherman was one such user.[73] She engaged in state action on Twitter in the year preceding the filing of this action, while Sherman was blocked.[74] The facts showing a continuing violation are not disputed. Equitable considerations weigh in favor of Plaintiffs, because Defendant's untimely raising of prescription is unfairly prejudicial and Plaintiffs had no notice to develop the record during discovery to support Mr. Sherman's claims. Mr. Sherman has Article III standing and his claims are not time-barred.

## 2. Defendant is not entitled to immunity for Plaintiffs' claims

Defendant alleges three theories of immunity for violating Plaintiff's First Amendment rights: Eleventh Amendment, legislative immunity, and qualified immunity. Each argument is unavailing, and this Court should find she is not entitled to judgment as a matter of law.

### a. Eleventh Amendment Immunity

Defendant argues that the Eleventh Amendment protects her from Plaintiffs' claims because any state action taken by a state official cannot be redressed unless the state action is

---

[69] Heath, 850 F.3d at 741.
[70] Nat'l R.R. Passenger Corp. V. Morgan, 536 U.S. 101, 125 (2022) (O'Connor, J., concurring).
[71] Exs. 24-27 (showing Defendant kept Plaintiff continuously blocked until spring of 2023, Ex. 1, Supp. Sherman Dec.
[72] Ex. 16, Jackson Dep. 337:15-19, ECF No. 52-5.
[73] Ex. 19, ("Jesus, Mary, and Joseph! I have been unblocked from Senator Jackson!")
[74] See supra notes 65-66.

pursuant to a state statute.[75] This argument fails as a matter of clearly established law. In support of her proposition, Defendant cites just one case: *Louisiana v. Hall*, a 2013 district court opinion from the Middle District of Louisiana.[76] The *Hall* court held that *Ex parte Young* did not apply because the defendants named in the suit did not have any connection with enforcing the statute at issue.[77] Defendant uses the description that the *Hall* court gives *Ex parte Young* to argue that Plaintiffs' claims do not fall under that exception because Plaintiffs are not challenging a statute.[78] Defendant's use of *Hall* for this purpose is misguided and misleading—the *Hall* court mentions unconstitutional statutes because the state action there *was* a state statute, not because there *must* be a state statute at issue.[79] In *Hall,* plaintiffs' claims failed because named defendants did not enforce the policy that injured plaintiffs. We have the opposite case here; Defendant Jackson has testified that she is responsible for blocking any users on her Twitter account.[80]

Jackson's argument about *Ex parte Young* is simply wrong. In *Freedom From Religion Foundation v. Abbott*, a case that Defendant Jackson herself cites to support another section of her motion, the Fifth Circuit articulated the standard for the *Ex parte Young* exception to the Eleventh Amendment: "in order to fall within the *Ex parte Young* exception, a suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law."[81] Plaintiffs meet this test, having brought suit against Defendant Jackson in her official capacity to enjoin her conduct in violation of federal law.

---

[75] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 14 n.1, ECF No. 50-1.
[76] Louisiana v. Hall, 974 F. Supp. 2d 944, 952 (M.D. La. 2013).
[77] Id. at 954.
[78] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 14 n.1, ECF No. 50-1.
[79] 974 F. Supp. 2d at 949.
[80] Ex. 16, Jackson Dep. 203:2-8; ECF No. 52-5.
[81] Freedom From Religion Foundation v. Abbott, 955 F.3d 417, 424 (5th Cir. 2020).

In an analogous case, the Eleventh Circuit found that a state official who blocked a citizen from a social media account the official maintains in their official capacity was not protected by the Eleventh Amendment.[82] In *Attwood v. Clemons*, the court considered whether a state representative violated a user's First Amendment rights when the representative blocked him on Twitter and Facebook. There, a state representative claimed that he was protected by the Eleventh Amendment because he was 'not a state officer who has authority to enforce or implement a law.'"[83] The court noted that there need not be a state law or policy violated by the state official for *Ex parte Young* to apply because "any act by a state official—as long as it is performed under color of state law—is sufficient."[84] As such, because the representative maintained both social media accounts at issue, made the decision to block the user, and had the power to unblock the user, the representative was "therefore a proper defendant under *Ex parte Young*."[85]

Under the well-established *Abbott* test Defendant Jackson's argument that *Ex parte Young* does not apply because there is not a state statute at issue fails.[86] Her argument is unsupported by any actual case law and contravenes long-established law.[87] Thus, this Court should reject Defendant Jackson's argument that she is entitled to Eleventh Amendment immunity from Plaintiffs' claims for injunctive relief.

b. *Legislative Immunity*

Defendant next asserts, for the first time, that Plaintiffs' claims are barred based on a bald and unsupported assertion of legislative immunity. Legislative immunity is absolute immunity for

---

[82] Attwood v. Clemons, 818 Fed. App'x 863, 868 (11th Cir. 2020).
[83] Id.
[84] Id.
[85] Id.
[86] Abbott, 955 F.3d at 424; Attwood, 818 Fed. App'x at 868.
[87] Abbott, 955 F.3d at 424; Attwood, 818 Fed. App'x at 868.

legislative acts[88] and it is an affirmative defense.[89] Federal Rule of Civil Procedure 8(c) requires affirmative defenses be set forth in responsive pleadings.[90] Because Defendant failed to raise this affirmative defense in a responsive pleading, she has waived it.[91] Raising this immunity for the first time at summary judgment is unfairly prejudicial to Plaintiffs, who did not propound discovery related to this issue as Defendant did not timely raise it. As such, this Court should reject this affirmative defense as untimely waived.

Next, even if this Court does not find that Defendant has waived this affirmative defense, Defendant Jackson still is not entitled to legislative immunity. The Supreme Court is clear: legislative immunity does not encompass all official acts by legislators,[92] only "purely legislative activities," not actions only "casually or incidentally related to legislative affairs."[93] The Fifth Circuit affirms that "not everything an official with legislative duties does is protected by absolute immunity"[94] and applies two tests to determine whether an act is legislative and entitled to legislative immunity:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decision making are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state action." If the action involves the establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently than others, it is administrative.[95]

---

[88] Hughes v. Tarrant Cnty., 948 F.2d 918, 920 (5th Cir. 1991).
[89] Med Care Emergency Med. Servs., Inc. v. City of Pharr, No. 7:21-CV-445, 2025 WL 209428, at *4 (S.D. Tex. Jan. 13, 2025) (citing to Andrews v. Adams, No. 23-50841, 2024 WL 4298150, at *2 (5th Cir. Sept. 26, 2024).
[90] Fed. R. Civ. P. 8(c).
[91] Johnson v. Johnson, 385 F.3d 503, 516, n.7 (5th Cir. 2004) (recognizing that affirmative defenses not raised in answer to complaint are generally waived, but noncompliance may be excused by the court if the defense is raised at a pragmatically sufficient time with no prejudice to plaintiffs).
[92] Gravel v. United States, 408 U.S. 606, 625 (1972) ("Legislative acts are not all-encompassing.").
[93] United States v. Brewster, 408 U.S. 501, 512 (1972).
[94] Minton v. St. Bernard Parish Sch. Bd., 803 F.2d 129, 135 (5th Cir. 1986).
[95] Hughes v. Tarrant County, 948 F.2d 918, 921 (5th Cir. 1991) (quoting Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir.1984)).

Defendant's actions administering her Twitter account fail both tests. The first test directs us to look at the "underlying facts on which the decision is based" to ascertain if they are generalizations related to policy or relating to particular individuals. Here, Defendant's actions in blocking Ms. Detiege and Mr. Sherman are not based on "legislative facts" but Defendant's own beliefs related to her particular interactions with Plaintiffs on Twitter.[96]

Defendant fares even worse under the second test, which asks whether the action establishes a general policy or if just singles out specific individuals for different treatment.[97] For example, a legislator who proposes or votes on legislation regarding budgeting that eliminates a job would be entitled to legislative immunity, whereas a legislator accused of dismissing a member of their own staff for discriminatory reasons is not entitled to immunity.[98] Here, in blocking Plaintiffs, Defendant did not establish a new policy—she blocked two members of the public from participating in the public forum of her Twitter page.

Defendant's argument that Plaintiffs cannot bring a § 1983 claim against a legislator without implicating legislative immunity is incorrect and unsupported by case law. Legislators have many duties other than simply passing legislation, and they are not immunized from all violations of the law simply because they are acting within the scope of their responsibilities.[99] Defendant's operation of her Twitter account (and specifically her actions in blocking Plaintiffs)

---

[96]Pls.' Mem. Supp. Mot. Summ. J. 26-27, ECF No. 52-3; Ex. 16, Jackson Dep. 282: 11-15 ("It's on a case by case basis…I keep saying it's on a case by case basis because that's how I judge things—on a case by case basis."), ECF No. 52-19.

[97] Hughes, 948 F.2d at 921.

[98] Almonte v. City of Long Beach, 478 F.3d 100, 103 (2d Cir. 2007); but see Davis v. Passman, 544 F.2d 865, 880 (5th Cir. 1977), on reh'g, 571 F.2d 793 (5th Cir. 1978), rev'd on other grounds, 442 U.S. 228 (1979).

[99] See Hutchinson v. Proxmire, 443 U.S. 111, 133 (1979) (holding an official not entitled to legislative immunity for statements in a press release); Davis v. Passman, 544 F.2d 865, 880 (5th Cir. 1977), on reh'g, 571 F.2d 793 (5th Cir. 1978), rev'd on other grounds, 442 U.S. 228 (1979) (holding an official not entitled to legislative immunity for sex-discrimination in firing staff member); Cinevision Corp. v. City of Burbank, 745 F.2d 560, 580 (9th Cir. 1984) (councilman who voted to disapprove of rock concerts based on content not entitled to legislative immunity).

constitute official acts but they are not essentially legislative in nature. Plaintiffs have shown that Defendant unequivocally uses her Twitter account as a tool of her legislative office, *infra* at sections V.3.c.i-iii, but the official act of administering her Twitter is administrative in nature, not legislative.  Communicating with the public on an official Twitter page is analogous to issuing press releases and newsletters, actions that the Supreme Court has already ruled are beyond legislative immunity.[100] The Eleventh Circuit has held that a legislator's activity on their Twitter page is not legislative in nature, likening it instead to a public dissemination of a press release.[101]

Defendant does not attempt to apply either of the Fifth Circuit tests to her actions on Twitter, nor does she argue why her actions should be considered legislative. She solely relies on *Hall v. Louisiana* for her invocation of legislative immunity. This reliance is misplaced. In *Hall*, the basis of the suit was the passage of legislation.[102] That is the definition of a legislative act and it is wholly distinguishable from Defendant's actions, which did not involve the actual voting or passing of legislation. In *Hall*, the assertion of legislative immunity was uncontested by the plaintiff.[103] This Court should deny Defendant legislative immunity because (1) she has waived the defense by not raising it and (2) her official actions on Twitter are not legislative in nature.

### c.   Qualified Immunity

The final defense raised by Defendant is qualified immunity, which can only apply to Plaintiffs' claims for damages against Defendant Jackson in her individual capacity.[104] This defense fails, too. "To overcome qualified immunity, the plaintiffs must show that [Defendant] (1) violated a constitutional right and (2) that 'the right at issue was "clearly established" at the time

---

[100] Hutchinson v. Proxmire, 443 U.S. 111, 133 (1979) (acknowledging that informing the public is a congressional duty but holding "transmittal of such information by press releases and newsletters is not protected by the Speech or Debate Clause.")
[101] Attwood v. Clemons, 818 F. App'x 863, 870 (11th Cir. 2020).
[102] 974 F. Supp. 2d 944, 949 (M.D. La. 2013).
[103] Id. at 954.
[104] Robinson v. Hunt Cnty., 921 F.3d 440, 452 (5th Cir. 2019).

of [the] alleged misconduct.'"[105] Here, see discussion *infra* sec. V.3,  and in Plaintiffs' Motion for Summary Judgment, Plaintiffs show that Defendant violated their First Amendment rights by engaging in impermissible viewpoint and content-based discrimination. The rights at issue—the rights be free of viewpoint discrimination and the free exercise of First Amendment rights on the internet—were clearly established  at the time of Defendant's violations. As such, Defendant cannot avail herself of qualified immunity.

As a threshold matter, Defendant is wrong in arguing that "Fifth Circuit precedent alone cannot clearly establish the law for qualified immunity purposes."[106] Defendant relies on *Ramirez v. Escajeda*, a case in which the Fifth Circuit found the other circuit cases cited by the plaintiff did not "clearly establish" the right asserted because they were too factually dissimilar.[107] This finding does not preclude Fifth Circuit precedent from clearly establishing law for the purposes of overcoming qualified immunity. Rather, it is long established that

> In determining what constitutes clearly established law, [the Fifth Circuit] first looks to Supreme Court precedent and then to our own. If there is no directly controlling authority, [the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute "a robust 'consensus of cases of persuasive authority.'"[108] Defendant's characterization of the source of law sufficient to overcome a defense of qualified immunity is wrong as a matter of law.[109]

In addition to misarticulating that standard, Defendant's qualified immunity argument is incorrect for two other reasons: (1) she is wrong about the date upon which the right must be clearly established; (2) she misidentifies the right that must be clearly established on the aforementioned date.

---

[105] Ramirez v. Escajeda, 44 F.4th 287, 291 (5th Cir. 2022) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).
[106] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 16 n.2, ECF No. 50-1,
[107] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 16 n.2, ECF No. 50-1, Ramirez, 44 F.4th at 293.
[108] Ramirez, 44 F.4th at 293.
[109] Shumpert v. City of Tupelo, 905 F.3d 310, 320 (5th Cir. 2018), as revised (Sept. 25, 2018) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

First, this Court should reject Defendant's argument that the only relevant years at issue are 2013 and 2022.[110] Defendant did violate Plaintiffs' rights in 2013 (Sherman) and 2022 (Detiege) when she blocked both plaintiffs; however, as explained above at *supra* notes 51-57*,* she continued to violate their rights every time she engaged in state action on her Twitter account while they were blocked.[111] Defendant continues to violate Ms. Detiege's constitutional rights today, testifying that "unless the courts order me to unblock this page, I do not intend to unblock it."[112] She also continued to violate Mr. Sherman's constitutional rights until spring of 2023.[113] Unlike most other qualified immunity cases, Defendant Jackson's violation of Plaintiffs' rights did not occur at one time.[114] This Court must consider whether the First Amendment rights violated were established at any time that Mr. Sherman and Ms. Detiege remained blocked from Defendant Jackson engaged in state action on her Twitter account.[115] Thus, the question is not whether the First Amendment rights violated were clearly established in 2013 or 2022, but whether or not they were established at any time that Plaintiffs remained blocked and Defendant engaged in state action on her Twitter account: 2023 for Mr. Sherman and anytime until the present for Ms. Detiege.

Next, this Court should reject Defendant's representation of Plaintiffs' right to be free of viewpoint-based discrimination in a designated public forum. Defendant argues that overcoming qualified immunity requires Plaintiffs to cite to a holding that "a state legislator violates random

---

[110] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 15, ECF No. 50-1.

[111] See discussion *supra* section V.1.b (on Sherman's claim not being time barred because of continuing violations doctrine); see also Lindke, 601 U.S. at 204 ("So far as deletion goes, the only relevant posts are those from which Lindke's comments were removed. Blocking, however, is a different story. Because blocking operated on a page-wide basis, a court would have to consider whether Freed had engaged in state action with respect to any post on which Lindke wished to comment.")

[112] Ex. 15, Jackson Dep. 343:12-15.

[113] Exs. 24-27, 36 (Sherman tweets in 2022 and 2023 showing he was still blocked); Supp. Sherman Decl. ¶ 6.

[114] See Lindke, 601 U.S. at 204 (noting that when blocked from viewing an entire page, a plaintiff's rights are violated every time a defendant engages in state action and he cannot view or comment.).

[115] See id.

Twitter users' First Amendment rights by blocking them"[116] But this characterization is too narrow. Viewpoint-based discrimination precedent has existed for decades and First Amendment protections on internet forums have been recognized by courts since the mid-2010s. The impermissibility of viewpoint discrimination *in any forum* is settled First Amendment law and has been at all times relevant to this litigation.[117] It is well-established that online speech is subject to the same First Amendment protections as speech made offline. In *Packingham v. North Carolina* (2017) the Supreme Court noted then that the internet was the then-"modern public square" and that "on Twitter, users can petition their elected representatives and otherwise engage with them in a direct manner."[118] By the time that Defendant Jackson unblocked Mr. Sherman in 2023, that right had been clearly established for several years.[119] That right is even more clearly established as to Ms. Detiege's claim because she remains blocked in the present. Defendant Jackson has notice **today** that she has violated Plaintiffs' First Amendment rights and still chooses not to unblock Ms. Detiege.[120] As such, she is not protected by qualified immunity.

---

[116] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 16, ECF 50-1.

[117] See, e.g., Lamb's Chapel v. Ctr Moriches Union Free Sch., 508 U.S. 384, 394 (1993) ("[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others"); Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 828 (1995) ("In the realm of private speech or expression, government regulation may not favor one speaker over another"); Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95 (1972) ("[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."); Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 641-43 (1994) (holding that discrimination based on the message of the speech is presumed to be unconstitutional).

[118] Packingham v. North Carolina, 582 U.S. 98, 104-05, 107 (2017).

[119] See discussion *infra* notes 121-124.

[120] Ex. 15, Jackson Dep. 343:12-15. Plaintiffs note that Defendant Jackson has characterized Ms. Detiege as "an anonymous and abusive troll," and alleges that she blocked the account in part because she thought it was fake, but that is false. Detiege's account is geotagged to New Orleans and has been at all times relevant to this litigation. Ex. 28, Detiege Dep. 56:6-17. Second, throughout the exchange with Defendant Jackson, Ms. Detiege's profile picture was of herself, and her pinned Tweet (meaning, a Tweet that is first visible when you access her profile) was of herself at a hockey match. Id. 46:6-23, 47:13-24. Finally, Ms. Detiege's first name "has always been in [her] bio," but as a general matter, she does not "put her last name online." Id. 47:6-12. Thus, from even a cursory glance at Ms. Detiege's profile, Defendant Jackson could have seen that she was a New Orleans resident, that she was a real person, and that her name is "Maya." Jackson certainly knows all of this today but persists with blocking.

The Fifth Circuit decision in *Robinson v. Hunt County* (2019) gave Defendant fair warning that the clearly established and settled prohibition on viewpoint discrimination also applied to the designated or limited public forum of a state actor's social media page.[121] Sister courts in this circuit have held that *Robinson* gave defendants in this Circuit fair warning that viewpoint discrimination within public comments on social media violates the First Amendment, and this Court should find the same.[122] Defendant's reliance upon *Kallinen v. Newman* is unavailing because the page in *Kallinen* was a personal page,[123] unlike Defendant Jackson's Twitter, which Defendant uses as a tool of her legislative office.[124]

Defendant also cannot point to the Supreme Court's decision in *Lindke* to assert qualified immunity, as *Lindke* simply further limits when a public official can be found to be engaged in state action in operating a social media page. Even prior to *Linke*, the governing Circuit law on this point was *Hunt*, which favorably adopted a Fourth Circuit standard holding that the interactive component of a public official's Facebook page is a public forum.[125] *Lindke* further articulated the standard for state action, but Defendant would have been liable under the prior standard anyway. If Defendant meets the two prongs set out in *Lindke*, which Plaintiffs submit she does (discussed *infra* section V.3.c), she cannot use the issuance of *Lindke* to disclaim liability.

---

[121] 921 F.3d 440, 447-48 (5th Cir. 2019).

[122] Evans v. Herman, No. 4:22-CV-2508, 2023 WL 4188347, at *4 (S.D. Tex. Apr. 24, 2023), report and recommendation adopted, No. 4:22-CV-02508, 2023 WL 4188466 (S.D. Tex. June 26, 2023)

[123] Kallinen v. Newman, 2023 WL 2645555, at *1 (5th Cir. Mar. 27, 2023)

[124] See discussion *infra* section V.3.c.ii; see generally Pls.' Mem. Supp. Mot. Summ. J., ECF No. 52-3 (detailing how Defendant Jackson's actions encourage engagement and foster debate regarding her legislative activities).

[125] Robinson v. Hunt Cnty., 921 F.3d 440, 447–48 (5th Cir. 2019) (holding that "the interactive component" of a public official's Facebook page was a public forum).

21

Finally, Defendant's claim of qualified immunity can only apply to Plaintiffs' claims for monetary relief[126] and any finding of qualified immunity does not preclude Plaintiffs' prayers for injunctive or declaratory relief.[127]

### 3. Defendant violated Plaintiffs' First Amendment rights

Twitter's utility as a means to petition elected officials has been accepted by a growing number of courts, including the nation's highest court, and is "the modern public square."[128] Defendant Jackson's Twitter activity established her page as a designated public forum.[129] She engaged in viewpoint discrimination in that public forum by blocking Plaintiffs on her Twitter account.[130] She engaged in all of this action under color of law. Plaintiffs' First Amendment rights were violated, and Defendant's Motion for Summary Judgment should be denied.

### a. Defendant's Twitter account is a designated public forum

Defendant devotes less than two pages to defending the merits of the claims in this case, and two paragraphs to forum analysis. She does not seriously dispute that her Twitter account is a designated public forum. She weakly argues that "there is no evidence that Senator Jackson designated it 'for the same widespread use as a traditional public forums.'"[131] Her briefing is scant because it has no legal or factual support. Defendant admits that she did not open the page "for particular types of expression by particular groups," so it clearly is not a limited forum. It is a designated forum, as briefed extensively by Plaintiffs.[132]

---

[126] Id. at 452.
[127] Id.
[128] Packingham v. North Carolina, 582 U.S. at 104-05, 107.
[129] See Pls.' Mem. Supp. Mot. Summ. J. 18-23, ECF No. 52-3.
[130] See discussion infra section V.3.
[131] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 11, ECF No. 50-1 (quoting Abbott, 955 F.3d at 426).
[132] Pls.' Mem. Supp. J. 18-23, ECF No. 52-3

### b. *Defendant engaged in viewpoint discrimination against Plaintiffs*

Defendant's actions with respect to Plaintiffs constitute impermissible viewpoint discrimination.[133] "Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination."[134] Defendant does not contest that Mr. Sherman's blocking is viewpoint discrimination, so she forfeits any argument on the merits regarding Mr. Sherman. Defendant's argument that blocking Ms. Detiege was narrowly tailored to serve a substantial government purpose is directly contradicted by the case law she cites.

Defendant Jackson relies on *Iancu v. Brunetti* to support the proposition that her blocking of Ms. Detiege is narrowly tailored "to keep her Twitter account free of racism and profanity,"[135] but *Iancu* supports Plaintiffs. The *Iancu* Court struck down a regulation prohibiting "immoral or scandalous" trademarks because it constituted impermissible viewpoint discrimination,[136] much like Defendant Jackson's "disrespectful" or "derogatory" standard. Because the *Iancu* regulation disfavored ideas that offend, it "discriminate[d] based on viewpoint, in violation of the First Amendment,"[137] just as Defendant Jackson does.[138] The Court in *Iancu* also "declin[ed] to address the government's argument that a restriction based on profane language 'would not turn on viewpoint, and so we could uphold it'" *because* it rejected the Government's argument that the statute was viewpoint-neutral.[139] Defendant Jackson cites no other support for her position that her

---

[133] Pls.' Mem. Supp. J. 23-29, ECF No. 52-3.

[134] <u>Robinson</u>, 921 F.3d at 447 (holding that defendants' actions "constituted viewpoint discrimination regardless of whether they were motivated by her criticism of the defendant sheriff's office or a determination that her comment was otherwise 'inappropriate.'"); <u>see</u> <u>Matal v. Tam</u>, 137 U.S. 1744, 1763 (2017) (majority opinion); <u>see also</u> <u>id.</u> at 1766 (Kennedy, J., concurring).

[135] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 23, ECF No. 50-1(citing <u>Iancu v. Brunetti</u>, 588 U.S. 388, 401 (2019)).

[136] <u>Iancu v. Brunetti,</u> 588 U.S. at 394.

[137] <u>Id.</u>

[138] 588 U.S. at 396; <u>see also</u> Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 23, ECF No. 50-1.

[139] <u>Id.</u>

blocking of Ms. Detiege was not viewpoint discrimination[140] because there is none. Giving offense

is a viewpoint,[141] and viewpoint discrimination is unconstitutional in any forum.[142] The burden to

justify her speech restriction is on Defendant Jackson and she cannot do so.[143]

Finally, Ms. Detiege's speech was not racist. Ms. Detiege herself is a Black woman, and

when asked at deposition why she tweeted that "I do not support all black women," she testified:

> "[a]s a black woman, I believe—you know, I do support a lot of black people but I
> think that there is this idea that as a black person or as a black woman or as a
> woman, you need to support everything that other black women or black people or
> women do, and that's not true. Other black women can be wrong."[144]

She also noted that the phrase "I do not support all [blank] women" is a popular meme that

circulates online and on Twitter.[145] Ms. Detiege was not espousing racism. She was vocally

declining to support Defendant, despite the fact that they are both Black women, because she

believed Defendant's abortion bill was dangerous and harmful for women.[146] Ms. Detiege

experienced a dangerous, ectopic pregnancy where she had difficulty accessing medical care and

she was angry because she believed Defendant's bill would make accessing medical care even

---

[140] Id.

[141] Robinson, 921 F.3d at 447; see Matal v. Tam, 137 U.S. 1744, 1763 (2017); see also id. at 1766 (Kennedy, J., concurring); Pls.' Mem. Supp. J. 17, ECF No. 52-3.

[142] See, e.g., Lamb's Chapel,508 U.S.at 394 ("[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others"); Rosenberger,515 U.S. at 828 ("In the realm of private speech or expression, government regulation may not favor one speaker over another"); Police Dept. of Chicago, 408 U.S. at 95 (1972) ("[T]he First Amendment means that government ahs no power to restrict expression because of its message, its ideas, its subject matter, or its content."); Turner Broadcasting System,, 512 U.S. at 641-43 (1994) (holding that discrimination based on the message of the speech is presumed to be unconstitutional).

[143] Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the *government proves that they are narrowly tailored to serve compelling state interests.*" (emphasis added)).

[144] Ex. 28, Detiege Dep. 55:22-56:4.

[145] Id. at 55:8-14; see also Mateus, I Do Not Support All Women, Some of You Bitches Are Very Dumb, KNOW YOUR MEME, https://knowyourmeme.com/memes/i-do-not-support-all-women-some-of-you-bitches-are-very-dumb (last visited) (explaining that "I Do Not Support All Women, Some Of You Bitches Are Very Dumb" is a viral tweet by @GURUJAHRA posted on January 2021. The post became a popular catchphrase, being used in other memes on [Twitter] and as a viral trend on TikTok in September 2022)."

[146] Ex. 28, Detiege Dep. 53:13-54:18

more difficult for people with complicated pregnancies.[147] Ms. Detiege is plainly not a "racist"[148] "anonymous and abusive troll;"[149] she is a Black woman who experienced devastating pregnancy loss and the difficulties of navigating the medical system, who voiced her dissent to the very elected official who authored the bill that regulated healthcare for pregnant women across Louisiana. This is the core, political speech that the First Amendment is designed to protect.

As such, this Court must reject Defendant's contention that blocking speech that is offensive or racist is narrowly tailored and find that Defendant Jackson did not meet her burden of proof. Accordingly, it should deny Defendant Jackson's motion for summary judgment on the merits of the case.

### c.   Defendant's conduct is state action

Finally, Defendant Jackson was operating under color of law when she blocked Plaintiffs on Twitter. The Supreme Court, in *Lindke v. Freed*, held that a government official's social-media activity constitutes state action (and is therefore subject to First Amendment scrutiny) when "the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media."[150] Defendant's analysis of her Twitter page is scant. Application of the *Lindke* test to the facts of this case paint a clear picture of state authority vested in Defendant and her intent to exercise it through her activity on Twitter.

### i.   Defendant has actual state authority to speak

An act by a public official constitutes state action when it can be traced back to the government's power or authority.[151] Defendant argues that because she, as a state senator, does not

---

[147] Id. at 54:1-18.
[148] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 8, ECF No. 50-1.
[149] Id. at 1.
[150] 601 U.S. at 198.
[151] Id.

have the authority to speak on behalf of the State of Louisiana, her actions on Twitter cannot constitute state action under the first prong of *Lindke*.[152] This argument oversimplifies *Lindke's* articulation of power from the "State." It is clear, based on the facts of *Lindke* and subsequent progeny, that "State" as used in *Lindke*, is synonymous with the *government*, not an actual state, such as Louisiana. This is evidenced in the facts of *Lindke*, wherein the defendant public official was a city manager of a small town in Michigan,[153] clearly having no authority to speak on behalf of the state of Michigan.[154] *Lindke* emphasizes authority to speak on "job-related topics," so we must look at job of a state legislator, not whether Defendant Jackson has the authority to speak on behalf of the State of Louisiana.[155] Defendant's argument that because she is not authorized to speak on behalf of the state of Louisiana, she cannot be liable for her actions fails.

Defendant next argues she cannot possess actual authority because the Legislature acts as a body.[156] The fact that the legislature acts as a body when *passing legislation* has no bearing on whether Defendant possesses actual authority to speak on behalf of her office. The fact that a public official does not have unilateral authority over a greater body is not a limitation on state action in *Lindke*, its progeny, or cases prior to *Lindke*, moreover, it has not even been discussed when analyzing state action.[157] For example, in *Fox v. Faison*, the court allowed §1983 claims to proceed

---

[152] Mem. L. Supp. Def. Katrina Jackson Mot. Summ. J. 19, ECF No. 50-1

[153] 601 U.S. at 191.

[154] See Dougherty v. Cnty. of Vermillion, No. 2:22-CV-00579-JPH-MJD, 2024 WL 3510214 (S.D. Ind. July 23, 2024) (applying *Lindke*, where Defendant was one of three county commissioners); Pinkhasov v. Vernikov, No. 1:23-CV-3460 (OEM) (SJB), 2024 WL 2188356 (E.D.N.Y. May 15, 2024) (applying Lindke, where Defendant was one of 50 city councilmembers).

[155] Lindke, 601 U.S. at 191; see also Mackey v. Rising, 106 F.4th 552 (6th Cir. 2024) (the state official possesses the authority to take a challenged action only if the action meaningfully relates to the official's "governmental status" or the "performance of his duties." (internal citations omitted)).

[156] Mem. L. Supp. Def. Katrina Jackson Mot. Summ. J. 19, ECF No. 50-1.

[157] See generally Dougherty, 2024 WL 3510214; Attwood, 818 F. App'x 863 (J. Grant, concurring); Pinkhasov, 2024 WL 2188356 (where Defendant's Motion to Dismiss as moot was denied); Clark v. Kolkhorst, No. 1:19-CV-198-LY, 2021 WL 5783210 (W.D. Tex. Dec. 7, 2021); Latiolais v. Griffith, No. CIV.A. 09-0018, 2011 WL 1238315 (W.D. La. Mar. 30, 2011), aff'd sub nom. Latiolais v. Cravins, 484 F. App'x 983 (5th Cir. 2012); Cinevision Corp. v. City of Burbank, 745 F.2d 560 (9th Cir. 1984).

against a state representative, even though he did not possess sole authority to speak on behalf of the state of Tennessee or the Tennessee house.[158] The same is true of *Attwood v. Clemons,* wherein claims were allowed to proceed against a Florida representative.[159] Defendant's argument that her speech cannot be state action because she is part of a larger body is unsupported.

Defendant recognizes that the salient question in *Lindke* is whether the speech itself is ordinarily within the scope of the public official's job duties.[160] Defendant has testified that keeping the public informed is one of her duties as a legislator[161] and Plaintiffs have shown that she often uses Twitter to inform the public about her legislative activities.[162] By her own admission the speech at issue in this case is state action because it is within the scope of her professed duty. This alone should end the matter.

In addition, *Lindke* envisioned that in some cases the general grant of authority to a high ranking official obviously encompasses a grant of authority to speak about those acts officially.[163] This is such a case. As Plaintiffs have briefed, Defendant Jackson is a high-ranking government official whose job contains the responsibility of speaking on legislative matters and for her elected office, and who also therefore has authority to censor for her office.[164]

Finally, and most conclusively for Defendant, the Court emphasized that there is likely authority to speak on behalf of the state where the public official censors an individual in connection with a matter within the official's "bailiwick" or portfolio of authority.[165] Defendant

---

[158] <u>Fox v. Faison</u>, 668 F. Supp. 3d 751, 768-69 (M.D. Tenn. 2023).
[159] <u>Attwood</u>, 818 F. App'x at 865; <u>Dougherty</u>, 2024 WL 3510214 at *1 (S.D. Ind. July 23, 2024) (wherein Defendant was one of three commissioners of a county); <u>see generally</u> <u>Pinkhasov</u>, 2024 WL 2188356 (claims allowed against one member of a fifty-member council).
[160] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 18, ECF No. 50-1.
[161] Ex. 16, Jackson Dep. 86:10-12, ECF No. 52-5.
[162] <u>See</u> Pls.' Mem. Supp. Mot. Summ. J. 40-43, ECF No. 52-3.
[163] <u>Lindke</u>, 601 U.S. at 201.
[164] Pls.' Mem. Supp. J. 35, ECF No. 52-3.
[165] <u>Lindke</u>, 601 U.S. at 199.

blocked both Plaintiffs for criticizing her legislative position and bills she authored[166]—matters indisputably within her bailiwick—engaging in the "direct manner" the Supreme Court has specifically protected.[167] In *Lindke,* the Court instructs that if a public official has the authority to speak on a matter on behalf of their office, that authority may extend to social media, even if not explicitly authorized by law or statute.[168]

Defendant Jackson's position as a high-ranking legislative official, her own testimony, and the prevailing custom and usage of Twitter by legislators, all support finding that she possesses actual authority to speak on behalf of her office. The fact that she censored Plaintiffs for criticizing her own legislation also supports this conclusion. Defendant's contention that she has no authority to speak on behalf of the state because of her lack of unilateral control in the legislature has no bearing on whether she engaged in state action. Likewise, Defendant's claim of no custom or usage also fails, because it is clear that legislators of all levels of government use Twitter, and she herself has admitted that social media makes her a better legislator. Lastly, the fact that there is an "official" account for the Louisiana House and Senate, generally, does not preclude Defendant from speaking on behalf of her legislative office individually on matters of the legislature, especially given that the posts made by Defendant are not simply "reposts" of content from those pages. Defendant Jackson clearly has actual authority to speak on behalf of her office, and this Court should find the same.

### ii. *Defendant purported to exercise her authority on Twitter*

In addition to possessing actual authority, Defendant purported to use that authority on Twitter. "Generally, a public employee' purports to speak on behalf of the State while speaking 'in

---

[166] <u>See generally</u>, Pls.' Mem. Supp. J. 16-17, 38-39, ECF No. 52-3.
[167] <u>Packingham</u>, 582 U.S. at 104-05, 107.
[168] <u>Lindke</u>, 601 U.S. at 200.

his official capacity or' when he uses his speech to fulfill "his responsibilities pursuant to state law."[169] Defendant's tweets almost all purport to speak in her official capacity. And she admits that her responsibility is to engage with and inform the public, and to get input on legislation. It is undisputed that she uses Twitter to fulfill these responsibilities.

### 1) Defendant's page is not personal in nature

Defendant argues her Twitter page is "unequivocally" her personal page, citing to her own deposition testimony and the fact that there is no "official" designation on her page.[170] This argument fails factually. Although she may occasionally tweet "personal posts and inspirational messages," and her current profile photo is of her wedding day; since she opened her account in 2012 the overwhelming majority of her tweets have been official in nature. Her page is definitively not personal; it is plainly either official, or "mixed use." This mixed-use distinction is important: when a page is mixed-use (containing both personal and official posts) and the blocking function prevents viewing the entire page, courts look to whether Defendant engaged in state action with respect to *any post on which [Plaintiff] wished to comment."*[171]

Defendant argues that under Lindke, one can "safely presume' that Jackson's speech on her Twitter account 'is personal (absent significant evidence indicating that a post is official).'" This deliberately misrepresents the law to this Court. The actual quote:

> *Had* [Defendant] account carried a label (*e.g.,* "this is the personal page of [Defendant]") or a disclaimer (*e.g.,* "the views expressed are strictly my own"), he would be entitled to a heavy (though not irrebuttable) presumption that all of the posts on his page were personal," because "[m]arkers like these give speech the benefit of clear context: Just as we can safely presume that speech at a backyard barbeque is personal, we can safely presume that speech on a "personal" page is personal (absent significant evidence indicating that a post is official).[172]

---

[169] Id. (quoting West v. Atkins, 487 U.S. 42, 50 (1988))
[170] Mem. L. Supp. Def. Katrina Jackson Mot. Summ. J. 20-21, ECF No. 50-1.
[171] Lindke, 601 U.S. at 204 (emphasis added).
[172] Id. (emphasis added).

Precisely <u>because there are no markers</u> on Defendant's page designating it personal in nature, she is entitled to no presumption.[173]

The "personal tweets" cited by Defendant are similarly misleading: of the twenty tweets cited,[174] only six[175] of them were posted prior to the filing of this lawsuit,[176] and only three of those six occurred prior to the incident with Plaintiff Detiege. It may be true that since being sued because of her official acts on Twitter she now tweets less about her legislation and more about her personal life, but to date Defendant has tweeted nearly 2,400 times over nearly twelve years, and her recent "personal tweets" cannot change the fundamental character of her account.[177] Plaintiffs' briefing cites to over 100 tweets from 2012 through the present that show Defendant's use of her Twitter to further her responsibilities as a legislator.[178]  Although the *Lindke* test is not about simply counting tweets, the volume of official acts shows that she uses the page to carry out her duties as an elected official. "Because blocking operate[s] on a page-wide basis,"[179] the fact that Defendant has engaged in state action on even a few tweets, or even a single tweet, is evidence enough of state action in this case.

Furthermore, regarding the official appearance of her page, at the time she blocked Ms. Detiege, her profile photo was her Senate headshot and her cover photo was (and still is) a photo at a prayer breakfast celebrating that she qualified for public office.[180] The same is true for when

---

[173] Pls.' Mem. Supp. J. 40-43, ECF No. 52-3.
[174] Ex. B-1, ECF No. 50-7; Ex. B-20, ECF No. 50-26.
[175] Ex. B-4, ECF No. 50-10; Ex. B-5, ECF No. 50-11; Ex. B-14, ECF No. 50-20; Ex. B-18, ECF. No. 50-24; Ex. B-19, ECF No. 50-25; Ex. B-20, ECF No. 50-26.
[176] <u>See generally</u> Pls.' Cmpl. (showing that the complaint was filed on Feb. 9, 2023), ECF No. 1
[177] <u>Lindke</u>, 601 U.S. at 204.
[178] <u>See</u> Ex. 1, ECF No. 52-5 (showing Defendant's tweets and authentication); Exs. 2-15, 17-27, ECF No. 52-5; Exs. 28-38, 42-45, 47-49, ECF No. 52-6; Exs. 57-67, 77-80, ECF No. 52-8; Exs. 81-90, 93-107, ECF No. 52-9, <u>See also;</u> Exs. 20-23, 30-35, 37-79; all Twitter interactions in which Defendant uses her Twitter as a tool of her office. Plaintiffs introduce these exhibits now to dispute Defendant's assertion that she does not use her Twitter to further her official duties as a public official.
[179] <u>Lindke</u>, 601 U.S. at 204 (emphasis added).
[180] Ex. A-1, ECF No. 50-3.

she blocked Mr. Sherman, when her Twitter handle was @RepKJackson.[181] Upon becoming a senator, Defendant changed her handle multiple times to reference her senatorial position by adding "Sen",[182] something done by 78 United States Senator Twitter accounts.[183] Defendant admits that when she started her Twitter, she intended for the account to "update [users] daily" on legislative activities.[184] Defendant's intent, coupled with the context of her page, support the finding that her Twitter is official or, at the very least, a mixed-use page.

Finally, Defendant concedes that she cannot post content on the entire legislature's pages[185] and that she does not maintain a newsletter.[186] Thus, her Facebook and Twitter accounts are her *only* official communication organs. Further, her Twitter links to KatrinaRJackson.com, her website which is maintained by a state-paid staffer,[187] making it her official page. It is indisputable that Defendant's page is at least mixed-use. As explained above, when a page is mixed-use, in determining whether there was a First Amendment violation, courts must look to whether [Defendant] had engaged in state action with respect to *any post on which [Plaintiff] wished to comment.*"[188] Here, Plaintiffs were blocked for their comments on matters plainly within Defendant's bailiwick, clearly constituting state action. But because Plaintiffs were blocked from viewing or interacting with *any* of Defendant's tweets, it is significant to this Court's analysis that Defendant frequently engaged in state action on Twitter. Defendant is wrong to restrict the analysis to the posts that "trigger" Plaintiffs' response.[189] By blocking Plaintiffs, Defendant Jackson has

---

[181] Ex. 1, 3, ECF No. 52-5 (Bogen Expert Report).
[182] Ex. 1, 3-4, ECF No. 52-5 (Bogen Expert Report).
[183] Ex. 29 (List of Senate Twitter Account Handles).
[184] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 2, ECF No. 50-1.
[185] Id.
[186] Ex. 15, Jackson Dep. 195:6-9 ("I don't have a newsletter anymore.").
[187] Mem. L. Supp. Def. Katrina Jackson's Mot. Summ. J. 2, ECF No. 50-1.
[188] Lindke, 601 U.S. at 204 (emphasis added).
[189] Mem. L. Supp. Def. Katrina Jackson Mot. Summ. J. 21, ECF No. 50-1.

prevented them from further commenting on her legislative matters and receiving information about legislation from a public official, so all of her tweets are relevant to the analysis.

### 2) *Defendant's tweets on legislative matters constitute state action*

Even when focusing solely on the specific posts leading to Plaintiffs' blockings, Defendant Jackson was purporting to act under color of law. Defendant now argues that her tweet on which Ms. Detiege commented "simply highlighted Louisiana Law," and likened it to the Court's example in *Lindke* of a mayor linking a parking announcement on his page.[190] This is a misrepresentation. The tweet in question ("From Womb to the Tomb" graphic)[191] was not "highlighting Louisiana Law,"[192] in the same way as a mayor reposts a parking announcement.[193] She did not simply post the text of the bill or quote its language;[194] instead she created and provided informative content and commentary regarding her own legislation, plainly a matter within her bailiwick. She included a policy platform of forward-looking statements, which are her future legislative priorities in the context of the legislation that she authored and passed.[195] Furthermore, both that graphic and the subsequent one providing more substantive information about the abortion bill[196] were not otherwise shared on social media, as both were made by or for Defendant Jackson, and both graphics were signed with "Senator Katrina R. Jackson."[197] This is wholly different than *Lindke's* "mayor" hypothetical, where the public official reposts (or in Twitter's

---

[190] Id.
[191] Ex. A-2, ECF No. 50-4.
[192] Mem. L. Supp. Def. Katrina Jackson Mot. Summ. J. 21, ECF No. 50-1.
[193] Lindke, 601 U.S. at 203.
[194] See Ex. A-2, ECF No 50-4.
[195] See Id.("We Must: Make Sure Women make fair wages to care for our children[.] We must stand with Louisiana while we fund anti-trafficking programs[.] We must create real resources for families[.] We must be about what we talk about; Support Women and Children from the Womb to the Tomb").
[196] Ex. A-3, ECF No. 50-5.
[197] See Ex. A-2, ECF No. 50-4; Ex. 24, ECF No. 52-5.

context, retweets) information previously posted by another user, or links to another website's announcement.[198]

Defendant also claims that when she tweets about her public office she is speaking "in [her] personal capacity as a friend and neighbor."[199] This argument cannot be made in good faith. Even the Senator's "Happy Mother's Day" post is signed, "From the desk of Senator Katrina R. Jackson."[200] The "From Womb to the Tomb" tweet from June 24, 2022[201] contains graphic clearly signed "Senator Katrina R. Jackson."[202] Defendant testified that when "Senator Katrina R. Jackson" accompanies a graphic, those are legislative opinions.[203] When Defendant Jackson outlines her legislative positions, she is not speaking as a "friend and neighbor," but as a state legislator articulating these positions to the public.[204] This is especially true when her social media engagements are connected to her own legislation.

Indeed, Defendant has posted dozens if not hundreds of legislative graphics, detailing her position on issues and the happenings of the legislature over the years on Twitter.[205] She also asks for Twitter users' opinions on issues, solicits bill ideas to file, and consistently interacts with other Twitter-users that have questions, comments, or need information.[206] Often, these solicitations and

---

[198] Lindke, 601 U.S. at 203.
[199] Mem. L. Supp. Def. Katrina Jackson Mot. Summ. J. 21-22, ECF No. 50-1.
[200] Ex. 86, ECF. No. 52-9
[201] Ex. A-2, ECF No. 50-4
[202] Id.
[203] Ex. 16, Jackson Dep. 382:7—383:7, ECF No. 50-2.
[204] Lindke, 601 U.S. at 201-02.
[205] See Ex. 4, ECF No. 52-5; Ex. 8, ECF No. 52-5; Ex. 9, ECF No. 52-5; Ex. 10, ECF No. 52-5; Ex. 11, ECF No. 52-5; Ex. 12, ECF No. 52-5; Ex. 13, ECF No. 52-5; Ex. 15, ECF No. 52-5; Ex. 24, ECF No. 52-5; Ex. 25, ECF No. 52-5; Ex. 31, ECF No. 52-6; Ex. 33, ECF No. 52-6; Ex. 34, ECF No. 52-6; Ex. 36, ECF No. 52-6; Ex. 57, ECF No. 52-8; Ex. 85, ECF No. 52-9; Ex. 86, ECF No. 52-9; Ex. 88, ECF No. 52-9; Ex. 89, ECF No. 52-9; Ex. 90, ECF No. 52-9; Ex. 106, ECF No. 52-9; Ex. 107, ECF No. 52-9; See also; Exs. 30-35, 44, 47, 48, 50, 52, 53, 57, 58, 60, 61, 71, 78; Plaintiffs introduce these new exhibits to dispute Defendant's characterization of her use of Twitter.
[206] Pls.' Mem. Supp. Mot. Summ. J 37, ECF No. 52-3

legislative graphics have only been posted to Defendant's Twitter account,[207] such that access to her Twitter is the only source for the information. Defendant Jackson has also responded and set up meetings with groups and organizations through interactions on Twitter.[208] She announced the winner of her District 34 scholarship on her Twitter.[209] She routinely discusses her policy positions and provides insight to people outside of her district.[210]

Finally, "[a]n official who uses government staff to make a post will be hard pressed to deny that he was conducting government business."[211] Defendant testified that, while she makes some of her graphics, her state-paid legislative aide also creates them, as well as members from the State Office at the Capitol.[212] She also testified to having using Twitter on both her government laptop and desktop.[213] Defendant's use of government staff and funds to create content on Twitter is not addressed in her briefing, but it is definitive under *Lindke*.  Defendant clearly possesses actual authority to communicate on behalf of her office, and she purports to exercise that authority on Twitter.

## VI.    Conclusion

Defendant has simply failed to show that she is entitled to judgment as a matter of law. Her defenses are unavailing and untimely. The facts and law clearly show that Defendant created a designated public forum and then engaged in viewpoint discrimination by blocking Plaintiffs from accessing that forum. Plaintiffs have shown that she acted under the color of law in blocking

---

[207] See, e.g., Ex. 19, ECF No. 52-5; Ex. 31, ECF No. 52-6; Ex. 35, ECF No. 52-6; Ex. 88, ECF No. 52-9; Ex. 89, ECF No. 52-9; Ex. 106, ECF No. 52-9; Ex. 107, ECF No. 52-9. See also; Exs. 31-34, 48, 51, 52, 57, 58. Plaintiffs introduced these new exhibits as Tweets to dispute Defendant's characterization of her use of Twitter.
[208] Pls.' Mem. Supp. Mot. Summ. J 37, ECF No. 52-3.
[209] Ex. 79 (Tweet announcing winner.).
[210] See e.g., Exs. 59-78.
[211] Lindke, 601 U.S. at 203.
[212] Ex. 16, Jackson Dep. 158:19–159:19, ECF No. 50-2.
[213] Id., Jackson Dep. 131:17–132:17, ECF No. 50-2.

Plaintiffs, constituting state action under Supreme Court precedent. For the foregoing reasons, Plaintiffs respectfully request this Court deny her Motion for Summary Judgment.

Respectfully submitted,

*/s/ Katie Schwartzmann*
Katie M. Schwartzmann, La No. 30295
Annie Cleveland, La. No. 41473
Landon Pettigrew, Student Attorney
Richard Crow, Student Attorney
Tulane First Amendment Law Clinic
6329 Freret Street, Suite 130
New Orleans, La 70118
o: (504) 862-8813
kschwartzmann@tulane.edu
acleveland@tulane.edu