UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

MAYA DETIEGE and DAYNE SHERMAN

CIVIL ACTION NO. 3:23-cv-175

VERSUS

KATRINA JACKSON, in her official
and individual capacities

JUDGE WALTER

MAGISTRATE JUDGE KAYLA D. MCCLUSKEY

**DEFENDANT KATRINA JACKSON'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

The rhetoric in Plaintiffs' Opposition and separate Statement of Facts[1] betrays the weakness of their case. Indeed, it is now eminently clear that Sherman has no standing, his claims are time-barred, and immunity doctrines bar both Sherman's and Detiege's claims. Moreover, the First Amendment claims themselves are not legally viable. The Court should therefore grant Senator Jackson's motion for summary judgment (ECF No. 50), deny Plaintiffs' motion for summary judgment (ECF No. 58) as moot, and dismiss Plaintiffs' claims.

## ARGUMENT

**I.  Senator Jackson Is Entitled to Judgment As a Matter of Law on Plaintiff Sherman's First Amendment Claims.**

**A.  Sherman Lacks Article III Standing.**

Sherman bore the burden of establishing "(i) that [he] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024); *see Carney v. Adams*, 592 U.S. 53, 59 (2020). In his own deposition, however, he did not claim to face any current or imminent concrete injury—and he waived any request for relief based on alleged past injuries. He thus has no Article III standing.

Trying to find a basis for Sherman's injunctive-relief claim, Plaintiffs now insist that Senator Jackson might effectuate some "policy" that might chill Sherman's speech sometime in the future. *See* Pls. Opp. at 2–3. That is pure lawyer-speak. For Sherman never testified at his

---

[1] Local Rule 56.2(1) provides that Plaintiffs' Opposition "must contain ... [t]he material facts that [they] contend[ ] are genuinely disputed." Senator Jackson notes for the Court's awareness that Plaintiffs' separate filing of a 10-page statement of facts (a) fails to comply with Local Rule 56.2(1) and thereby (b) side-steps the Court's denial of Plaintiffs' request for 25 additional pages for their Opposition. *See* Pls. Opp. (35-page brief filed at the Court's page-limit extension to 35 pages). Because Plaintiffs' Opposition fails to save their case on its own terms, Plaintiffs' failure to comply with the Rules and this Court's directive does not impact the outcome of the case. But the Court may wish to admonish Plaintiffs or strike their filings as the Court deems necessary.

deposition that he has any fear of being re-blocked, let alone any evidentiary basis for such a fear. *See* Ex. C at 16:24–25 ("I don't recollect ever being reblocked."). Moreover, his counsel's assertions are entirely speculative, which dooms Sherman. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024) ("Where, as here, the parties have taken discovery, [he] cannot rest on 'mere allegations,' but must instead point to factual evidence."); *see also All. for Hippocratic Med.*, 602 U.S. at 381. In addition, Sherman's self-serving claim (at 4) that he "will censor himself in an attempt to avoid being blocked" (and thus, that's Article III injury) is foreclosed by *Murthy*. *See* 603 U.S. at 73 (Plaintiffs "argue that they suffer 'continuing, present adverse effects' from their past restrictions, as they must now self-censor on social media. But the plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" (citation omitted)). And for the same reasons, a citation-less assertion (at 4) that "Sherman's criticism of [Senator Jackson] will earn him a block after the conclusion of this suit" does not give him Article III standing for injunctive relief regarding alleged current or future harm.

So, too, with Sherman's waiver of any claim for monetary relief. *Compare* Am. Compl. at 16 (seeking "nominal and compensatory damages, not to exceed $20"), *with* Ex. C at 18:12–13 ("I am not seeking monetary compensation."). By explicitly denouncing his claim for monetary relief, Sherman seeks no relief that would "redress" any injury from purported prior blocking. *All. for Hippocratic Med.*, 602 U.S. at 381. For that reason, Sherman understandably backs away from the monetary-relief issue. *See* Pls. Opp. 5 (summarily stating that "[h]e also has standing to seek compensatory and nominal damages"). Instead, his lawyers now hint that it would be "unreasonabl[e]" to expect Sherman to know "the exact legal remedies contained in Plaintiffs' prayer for relief (drafted by his lawyers)." *Id.* at 7. Setting aside that "[t]he plaintiff"—not his

2

counsel—"is the master of the complaint," *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (quotation marks omitted), Plaintiffs notably do not (and cannot) dispute that Sherman's sworn testimony unequivocally waives any request for monetary relief—and thus, he has no standing to assert a First Amendment claim based on alleged prior harm.

Recognizing as much, Plaintiffs attack a strawman, insisting that Sherman's "noble and important reason for bringing this suit"—to make new First Amendment law—"does not negate Article III standing." *Id.* at 6. That is not Senator Jackson's point. The point (indeed, the Supreme Court's point) is that, "[b]y requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *All. for Hippocratic Med.*, 602 U.S. at 381. Here, contrary to Plaintiffs' complaints (at 6–7), Sherman has no injury—past, present, or future—for which he seeks redress. He is just a plaintiff who sued "simply because [he] believes that [Senator Jackson] is acting illegally." *Id.* He has no standing.

Two final points. *First*, Sherman's problem is not mootness. *Contra* Pls. Opp. at 4. It is that he never had standing to sue in the first place—for both his injunctive relief claim (because he has no evidence of current or imminent harm) and his monetary-relief claim (because he expressly waived any request for redress based on past injuries). *See, e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 718–20 (2022) (distinguishing between mootness and standing). And that "distinction matters" because Plaintiffs "bear[] the burden to establish" standing. *Id.* at 719. Sherman has failed to do so. *Second*, Sherman cannot keep his First Amendment claim alive by asserting (at 5–6) that the Court could just "grant declaratory relief" to him. Hornbook law requires a Declaratory Judgment Act plaintiff to satisfy the elements of Article III standing—which Sherman cannot. *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006); *see Waller v. Hanlon*,

3

922 F.3d 590, 603 (5th Cir. 2019) ("[T]he Declaratory Judgment Act does not vest the federal courts with jurisdiction broader than Article III's 'case or controversy' limitation."). Indeed, "[t]o obtain [declaratory] relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future"—which Sherman has not. *Waller*, 922 F.3d at 603 (citation omitted). And that's why his citation (at 5 n.31) of *Robinson v. Hunt County*— which did not even address standing—does not help him; there, the plaintiff "represented that she remains banned," *i.e.*, unlike Sherman, she suffered continuing harm that was redressable. 921 F.3d 440, 445 (5th Cir. 2019). For these reasons, Sherman cannot escape his lack of standing.

### B. Sherman's Claims Are Time-Barred.

Sherman's claims also are barred because he waited too long to sue. By Sherman's own telling—and as his brief now confirms—"the interaction that ultimately led to Ms. Jackson blocking [him] occurred in 2013." Ex. C at 11:11–15; *see* Pls. Opp. at 8 ("Mr. Sherman's First Amendment claim accrued in April of 2013"). There is thus no question that Sherman's cause of action (if any) arose in 2013, that he was aware of this fact *for a decade*, and then that he chose to sue in 2023—well after his one-year limitations period expired. *See, e.g.*, *Hearn v. McCraw*, 856 F. App'x 493, 495–96 (5th Cir. 2021) (per curiam) ("Accrual begins when a plaintiff is aware that he has been injured or has sufficient information to know as much."). He has no serious response.

*First*, he claims (at 8) that Senator Jackson forfeited his limitations problem. He is wrong. His forfeiture argument is based on a misunderstanding of the Federal Rules, which—when a party files a responsive pleading—generally require the party to include a limitations defense. *See* Fed. R. Civ. P. 8(c)(1). But he then acknowledges (at 8) that, after he appeared for the first time as a plaintiff in the Amended Complaint, the parties proceeded directly to cross motions for summary judgment; there was no responsive pleading. Courts within the Fifth Circuit have long held that a defendant does not "waive its defense of prescription" just because "it ha[s] not filed an answer to

4

the complaint"—so long as the plaintiff "'can adequately confront and defend against'" the defense. *Jackson v. Am. Bankers Ins.*, 2006 WL 8456128, at *23 (E.D. La. Sept. 12, 2006) (quoting *Theunissen v. GSI GROUP*, 109 F. Supp. 2d 505, 509 (N.D. Miss. 2000)). In fact, even if a defendant *did* file an answer and failed to include an affirmative defense, that defense is not automatically forfeited, so long as the plaintiff has a fair opportunity to respond to it. *See, e.g., Graham v. Hamilton*, 872 F. Supp. 2d 529, 541–42 (W.D. La. 2012); *Walker v. United States*, 2008 WL 2641334, at *2–3 (W.D. La. July 1, 2008) (permitting affirmative defenses not raised in a responsive pleading); *see also Strong v. Green Tree Servicing, LLC*, 2016 WL 4095597, at *8 (N.D. Tex. Aug. 1, 2016) (collecting cases where, as here, raising a defense at summary judgment was sufficient since "the party opposing summary judgment has a full opportunity to address the defense in its response"). Sherman's automatic forfeiture argument is meritless.

*Second*, Sherman briefly claims (at 8) that "[it] would be inequitable to allow Defendant to raise this defense now, as Plaintiffs were not on notice and did not develop a record on this defense in discovery." As *Jackson* and *Theunissen* illustrate, it is well-settled that limitations defenses may be litigated at summary judgment. Moreover, despite suggesting he does not have the record he wants, Sherman spends four pages of briefing (at 9–12) producing record evidence that (in his view) solves his limitations problem. He does not identify any other evidence that he could have obtained, underscoring that he will not be prejudiced by the Court time-barring his claim.

*Finally*, as predicted, Sherman latches (at 10–12) onto the continuing violation doctrine to avoid his limitations period. But he never acknowledges Senator Jackson's threshold point that the doctrine does not apply here. Indeed, he cites no case with even marginally similar facts that suggests the doctrine is relevant. *Cf. Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018) ("We have dealt with this version most frequently in the employment discrimination context,

5

though we have recognized its potential applicability in other areas of law as well."). Any discussion of the doctrine here is thus purely academic.

Nonetheless, the doctrine would not help Sherman even if it were relevant. The Fifth Circuit has repeatedly emphasized that the doctrine is satisfied only where a plaintiff can show that "there are separate-but[-]related acts at issue." *See Hearn*, 856 F. App'x at 496 (collecting cases). Sherman cannot do so because, "[s]imply, there is only one act at issue"—Senator Jackson's alleged blocking of him in 2013. *Id.* Sherman tries to twist *Lindke v. Freed*, 601 U.S. 187 (2024)—which had nothing to do with the continuing violation doctrine—into a rule that restarts Sherman's limitations period every time Senator Jackson posted a Tweet while he was blocked. The Fifth Circuit rejected that tactic in *Hearn* and the underlying cases. Each instance in which Sherman was unable to see Senator Jackson's posts was not "a continuing tort, but rather the continuing *effects* of an alleged harm," that is, the blocking in 2013. *Hearn*, 856 F. App'x at 496–97 (emphasis added). And that forecloses Sherman's invocation of the doctrine.

**II.    Plaintiffs' Claims Are Barred in Their Entirety By Senator Jackson's Immunity.**

Qualified immunity likewise resolves the entire case.

**A.  Qualified Immunity Bars the Individual-Capacity Claims.**

"Qualified immunity shields a[ ] [state official] from liability if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "To overcome qualified immunity," a plaintiff "must show that [the defendant] (1) violated a constitutional right and (2) that the right at issue was clearly established at the time of the alleged misconduct." *Id.* at 291 (cleaned up). Senator Jackson's opening brief explained that there are no decisions from the Supreme Court, or even the Fifth

6

Circuit, clearly establishing that a state legislator violates random Twitter users' First Amendment rights by blocking them. Plaintiffs' Opposition offers some replies, none availing.

*First*, Plaintiffs claim that "Defendant is wrong in arguing that 'Fifth Circuit precedent alone cannot clearly establish the law for qualified immunity purposes.'" Pls. Opp. at 18. Plaintiffs omit the remainder of the quoted footnote, which explains that Senator Jackson made this argument for preservation purposes since *Ramirez* states that "the Supreme Court has left open" this question. 44 F.4th at 293. Plaintiffs also omit Senator Jackson's point that this question is ultimately immaterial here because Plaintiffs do not even have a Fifth Circuit case—from any year, *see* Pls. Opp. at 19 (quibbling with what year to look at)—clearly establishing their alleged rights.

*Second*, and in that vein, Plaintiffs try to take the qualified-immunity inquiry to 30,000 feet by reframing the rights question: "The impermissibility of viewpoint discrimination *in any forum*," Plaintiffs say (at 20), "is settled First Amendment law and has been at all times relevant to this litigation." As even Plaintiffs appear to acknowledge, that high-level articulation of the alleged right in question does not fly for qualified-immunity purposes. *See, e.g.*, *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020) ("There must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful. This rule is a demanding standard, and the Supreme Court has repeatedly told us not to define clearly established law at a high level of generality." (cleaned up)). Specifically, Plaintiffs grasp at only two cases to try to crystallize the alleged right in question—to no avail.

One, they cite (at 20) *Packingham v. North Carolina*, 582 U.S. 98 (2017), which addressed a state prohibition on convicted sex offenders from accessing social media where children are present. Plaintiffs pluck two quotes—that the internet is the "modern public square," and that social-media users "can petition their elected representatives and otherwise engage with them in a

7

direct manner"—to claim that somehow *Packingham* clearly established that a state legislator's blocking of random Twitter users violates the First Amendment. That *Packingham* had nothing do with how public officials run their social media accounts, much less the constitutional framework for evaluating such conduct, speaks for itself.

Two, Plaintiffs cite *Robinson v. Hunt County*, 921 F.3d 440 (5th Cir. 2019), to claim (at 21) that Senator Jackson had "fair warning that the clearly established and settled prohibition on viewpoint discrimination also applied to the designated or limited public forum of a state actor's social media page." But Senator Jackson addressed *Robinson*, and Plaintiffs have no answer: (1) *Robinson* involved a municipal-liability claim, not an individual-capacity claim subject to qualified immunity; and (2) the Fifth Circuit "assume[d]," without deciding, that the County's Facebook page was "a forum subject to First Amendment protection," a heavily disputed issue here. *Robinson*, 921 F.3d at 448. *Robinson* thus comes nowhere close to clearly establishing Plaintiffs' putative First Amendment right not to be blocked by Senator Jackson.[2]

### B. Plaintiffs Have Not Preserved Official-Capacity Claims.

The qualified-immunity analysis leaves only Plaintiffs' official-capacity claims standing—but, at this point, it does not appear that Plaintiffs have even preserved official-capacity claims. To be sure, they have purported to sue Senator Jackson in her official capacity. But, as their cited case (at 14 nn.82–87, 101) suggests, "that label is not enough." *Attwood v. Clemons*, 818 F. App'x 863, 870 (11th Cir. 2020) (Grant, J., concurring in part); *see id.* at 869 (maj. op.) (declining to reach the issue because the parties agreed on the nature of the official-capacity claims). That is true here because Plaintiffs "target[] [Senator Jackson] not as a proxy for the sovereign, but for personal

---

[2] Plaintiffs' citation (at 21 n.122) of *Evans v. Herman*, 2023 WL 4188347 (S.D. Tex. Apr. 24, 2023), to suggest otherwise is unavailing, not least because there is no legal basis for holding that an unreported decision from a Texas district court suffices to clearly establish a constitutional standard for qualified-immunity purposes.

8

conduct that will not be repeated by [her] successor-in-office." *Id.* at 870 (Grant, J.). They "seek[ ] no relief from the office that [she] holds, allege[ ] no [Louisiana Senate] policy or custom regarding [senators'] social media accounts, and request[ ] no remedy that will in any way operate against the [Louisiana Senate] or any other state entity." *Id.* at 873; *compare, e.g.*, Pls. Opp. at 2 (emphasizing request for "declaratory and injunctive relief to prevent Defendant from re-blocking [Sherman]"). As Plaintiffs now frame their claims, therefore, it appears that there are no true official-capacity claims, which would render irrelevant any discussion of sovereign immunity. On that understanding, therefore, Senator Jackson rests on the prior briefing of her Eleventh Amendment immunity and legislative immunity arguments—because qualified immunity resolves the only live claims, which are the individual-capacity claims.

### III.   In All Events, Plaintiffs Have No Viable First Amendment Claim.

#### A.  Plaintiffs Have No Cause of Action Under § 1983.

Even if the Court could reach the merits, Plaintiffs have no response to the fact that *Lindke* bars this action. Because Senator Jackson has briefed this issue at length (ECF No. 50-1 at 17–22, ECF No. 69 at 17–24), and because Plaintiffs have failed to raise substantially new arguments as to these issues in their opposition (at 25–34), Senator Jackson rests on her previous arguments. Namely, Step One of the *Lindke* standard resolves this case: No state action exists (and thus Plaintiffs have no cause of action) because Senator Jackson has no "actual authority to speak on behalf of the State on a particular matter." *Lindke*, 601 U.S. at 204. Plaintiffs still have not pointed to a single law that allows State senators to speak *on behalf of the State*. Nor have they identified a longstanding and well-settled custom of Louisiana senators speaking on the State's behalf on Twitter. That is easy—and the Court need say no more. As for *Lindke* Step Two, Plaintiffs' failure to identify "any post on which [they] wished to comment" ends the Step Two analysis in the

9

blocking context. *Id.* On either prong, therefore, Plaintiffs do not have a cause of action under § 1983.

**B. Senator Jackson Did Not Violate Plaintiffs' First Amendment Rights.**

Even if Plaintiffs could satisfy the *Lindke* standard (they cannot), summary judgment for Senator Jackson remains proper on the merits of the First Amendment claim. As explained at length (ECF No. 69 at 24–28), Plaintiffs incorrectly label Senator Jackson's Twitter page as a designated public forum. *See, e.g.*, Pls. Opp. at 22. Plainly stated, "[t]he government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). There is no record evidence showing that Senator Jackson intentionally opened her Twitter page for public discourse solely because her account is publicly accessible.

And in any event, the Senator's narrowly tailored blocking of Detiege because of her "burn in hell" and "dumb Black bitch" attacks cannot be reasonably regarded as viewpoint discrimination. *See, e.g.*, *Iancu v. Brunetti*, 588 U.S. 388, 401 (2019) (Roberts, C.J., concurring in part and dissenting in part) ("The First Amendment protects the freedom of speech; it does not require the Government to give aid and comfort to those using obscene, vulgar, and profane modes of expression."); *see also id.* at 397 (maj. op.) (declining to address the government's argument that a restriction based on profane language "would not turn on viewpoint, and so we could uphold it"). Senator Jackson did not violate Plaintiffs' rights under the First Amendment.

## CONCLUSION

The Court should grant summary judgment in Senator Jackson's favor, dismiss Plaintiffs' claims, and deny Plaintiffs' cross-motion as moot.

Dated: February 17, 2025                       Respectfully submitted,

   /s/ *Caitlin Huettemann*
CAITLIN HUETTEMANN (La #40402)
 *Assistant Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6705
Facsimile:   (225) 326-6795
huettemannc@ag.louisiana.gov

*/s/ Thomas M. Hayes, IV*
Thomas M. Hayes, IV (La # 28600)
HAMMONDS, SILLS ADKINS, GUICE, NOAH & PERKINS, L.L.P.
1500 N. 19th Street, Suite 301
Monroe, Louisiana 71201
Telephone: (318) 324-0101
Facsimile: (318) 322-5375
Email: thayes4@hamsil.com

*Counsel for Defendant Katrina Jackson*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2025, pursuant to Federal Rule of Civil Procedure 5(b)(2)(C), a true and correct copy of the foregoing memorandum, and all attachments thereto, was served by CM/ECF.

Respectfully submitted,

 /s/ *Caitlin Huettemann*
CAITLIN HUETTEMANN (La #40402)
 *Assistant Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY
GENERAL
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6705
Facsimile:  (225) 326-6795
huettemannc@ag.louisiana.gov

*Counsel for Defendant Katrina Jackson*
