# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 8, 2026

Lyle W. Cayce
Clerk

No. 25-30514

MAYA DETIEGE; DAYNE SHERMAN,

*Plaintiffs—Appellants*,

*versus*

KATRINA R. JACKSON,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:23-CV-175

## JUDGMENT

Before HAYNES and GRAVES, *Circuit Judges*[*].

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

[*] The two judges are quorum since the third judge is unavailable on this case.

IT IS FURTHER ORDERED that Appellants pay to Appellee the costs on appeal to be taxed by the Clerk of this Court.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See FED. R. APP. P. 41(B). The court may shorten or extend the time by order. See 5TH CIR. R. 41 I.O.P.

UNITED STATES COURT OF APPEALS FIFTH CIRCUIT

**Certified as a true copy and issued as the mandate on Oct 13, 2026**

**Attest:**

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# United States Court of Appeals for the Fifth Circuit

---

No. 25-30514

---

United States Court of Appeals
Fifth Circuit

**FILED**

September 8, 2026

Lyle W. Cayce
Clerk

Maya Detiege; Dayne Sherman,

*Plaintiffs—Appellants*,

*versus*

Katrina R. Jackson,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:23-CV-175

---

Before Haynes and Graves, *Circuit Judges*.

Per Curiam:*

This case arises from Louisiana State Senator Katrina R. Jackson's decision to block two users on Twitter following contentious exchanges. Those users sued Jackson, arguing that her blocking violated the First Amendment. The district court concluded that the users failed to identify any state action and dismissed the case. Finding no error, we affirm.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5. The two judges are quorum since the third judge is unavailable on this case.

## I. Background

Senator Katrina R. Jackson has maintained an account on Twitter (now known as X) since 2012.[1] Before serving as a state senator, Jackson served in Louisiana's House of Representatives, and she has used her account throughout her time as a legislator. Jackson posts on Twitter about her personal life—e.g., her engagement, religion, and family events—as well as her professional life as a legislator—e.g., voting on certain bills, press releases from her office, and information about bills she sponsored. Her account is "public," so it is accessible to any Twitter user. Users can follow her and engage with her posts by responding to, republishing, or "liking" her posts. Then, like any other user, Jackson's account allows her to block others on the platform.

On two occasions relevant to this action, Jackson chose to block two non-constituent Louisiana residents.

Dayne Sherman contends that Jackson blocked him sometime in or around 2013. In 2013, Jackson and Sherman engaged in a multi-day discussion regarding the legality of a bill Jackson sponsored to permit prayer in public schools. The debate centered around the bill's constitutionality. For instance, Sherman made clear his view that the bill would be unlawful, "tagging" Johnson and stating: "Not what the courts say. It's unconstitutional #prayer." But sometime thereafter, Sherman says that Jackson blocked him. However, Sherman acknowledges that Jackson later unblocked him, and he joined this action only after that time. We thus DISMISS Sherman and do not address his claim further; the remainder of this opinion regards only Detiege's claim.

---

[1] Although Twitter has since changed its name to X, we will refer to the platform as Twitter because, at all times relevant to this dispute, the platform was known as Twitter.

Jackson blocked Maya Detiege in 2022. Their exchange began following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). Detiege responded to Jackson's comments with unpleasant arguments, and they had some back and forth. Jackson blocked Detiege sometime after this exchange.

Detiege sued Jackson early in 2023, pursuant to 42 U.S.C. § 1983, for violating her First Amendment free speech rights. Once discovery closed, the parties filed cross-motions for summary judgment. The district court denied Plaintiffs' motion but granted Jackson's. It then entered final judgment, dismissing Plaintiffs' action. Plaintiffs appealed.

## II. Jurisdiction & Standard of Review

The district court had jurisdiction over this case under 28 U.S.C. § 1331, and we have jurisdiction to consider this appeal under 28 U.S.C. § 1291 since the district court entered final judgment.

We review a district court's grant of summary judgment de novo. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 180 (5th Cir. 2009). "Summary judgment is proper if the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law." *Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.*, 73 F.4th 322, 327 (5th Cir. 2023) (citation omitted); Fed. R. Civ. P. 56(a).

## III. Discussion

Plaintiffs contend that the district court erred when determining that Jackson did not act under color of state law when she blocked them on Twitter. We disagree.

In *Lindke v. Freed*, the Supreme Court announced the test for determining whether "a public official's social-media activity constitutes state action under § 1983." 601 U.S. 187, 198 (2024). As its text clarifies,

§ 1983 "provides a cause of action against every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State* deprives someone of a federal constitutional or statutory right." *Id.* at 194 (citation modified). "[T]his provision protects against acts attributable to a State, not those of a private person." *Id.* At times, "the line between private conduct and state action is difficult to draw." *Id.* at 195. This is particularly the case where social media is involved and when the relevant state official "routinely interacts with the public." *See id.* at 196–97.

With this in mind, the Court explained that social-media activity constitutes state action "only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when [s]he spoke on social media." *Id.* at 198. We begin and end with *Lindke*'s first step.[2]

At step one, a defendant "must have actual authority rooted in written law or longstanding custom to speak for the State." *Id.* at 201. "An act is not attributable to a State unless it is traceable to the State's power or authority." *Id.* at 198. One must first possess power before she can misuse it. *Id.* at 200. Indeed, "[p]rivate action—no matter how 'official' it looks—lacks the necessary lineage" because "[t]he appearance and function of the social-media activity . . . cannot make up for a lack of state authority." *Id.* at 198.

To determine whether a public official possesses actual authority to speak on the state's behalf, we look to the sources set out in § 1983: "statute, ordinance, regulation, custom, or usage." *Id.* at 200 (quoting 42 U.S.C. § 1983). "Statutes, ordinances, and regulations refer to written law through

[2] Though *Lindke* dealt with executive branch officials, the Court's opinion does not limit the requisite analysis to only the executive. It draws no distinction between state action on behalf of executive and (say) legislative branch officials. *See id.* Accordingly, we apply *Lindke*'s test without reservation.

which a State can authorize an official to speak on its behalf," while "'[c]ustom' and 'usage' encompass 'persistent practices of state officials' that are 'so permanent and well settled' that they carry 'the force of law,'" *id.* (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). So, we look for written law or persistent practices carrying the force of law. *Id.*[3] "The inquiry is not whether making official announcements *could* fit within the job description; it is whether making official announcements is *actually* part of the job that the State entrusted the official to do." *Id.* at 201. Thus, simply working for the government does not render everything that person says state action.

To start, Plaintiffs fail to cite any written law that provides Jackson with authority to speak on behalf of the state when speaking directly to the public regarding legislative issues. Of course, state senators like Jackson possess power to propose, debate, and vote on pending legislation that creates or modifies laws, *see* LA. CONST. art. III, §§ 1, 15, and are required to "faithfully and impartially discharge" their duties, *id.* at art. X, § 30. Further, the senate's rules require committees to make various information available to the public and seek input from the public. LA. S. RULE §§ 7.6(C), 10.11. But Plaintiffs have not identified a provision providing individual state senators with the authority to speak on behalf of the state when engaging the public on legislative issues.[4] Indeed, a senator may well be

---

[3] Though the Court acknowledged that "a grant of authority over particular subject matter may reasonably encompass authority to speak about it officially," in the same breath, it stressed that "courts must not rely on excessively broad job descriptions to conclude that a government employee is authorized to speak for the State." *Id.* at 200–01 (citation modified).

[4] For this reason, this case is unlike *Garnier v. O'Connor-Ratcliff*, 136 F.4th 1181 (9th Cir. 2025). There, the Ninth Circuit was presented with written law—a state statute and school board bylaws. *Id.* at 1188–89; *Id.* at 1188–90 ("Because the Board bylaws demonstrate that O'Connor-Ratcliff's authority 'in context, include[d] authority to make

voicing disagreement with what the majority will do on behalf of the state. In the absence of written law, Plaintiffs must identify some persistent practice of speaking on behalf of the state.

But, after searching for an applicable persistent practice, Plaintiffs likewise come up empty handed. Plaintiffs say that "the Legislature has issued statements recognizing th[e] duty of legislators to speak to and inform the public, and there is a long and well-established history of legislators doing the same, both on and offline." They then cite numerous social media posts in which various state legislators have informed the public about pending legislative matters. But while such statements may be common practice, Plaintiffs have not shown that these practices demonstrate that legislators have "purported to speak on [the state's] behalf," *Lindke*, 601 U.S. at 200, or that these practices "are 'so permanent and well settled' that they carry 'the force of law,'" *id.* (quoting *Adickes*, 398 U.S. at 167–68).

A legislator's authority to speak on behalf of the state is not coextensive with her official duties. To be sure, in a different context, we have acknowledged that "the legislative duties of Members of Congress are not confined to those directly mentioned by statute or the Constitution." *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995). In *Williams*, we were required to address whether certain conduct fell within United States Congressman Jack Brooks's scope of employment. *Id.* at 506–07. There we noted that, along with "participating in debates and voting on the Congressional floor," a legislator is also "to serve and respond to his or her constituents" by, among other things, "informing constituents and the public at large of issues being considered by Congress." *Id.* at 507. So too for

official announcements' regarding PUSD Board of Education activities, *Lindke*'s first step is satisfied."). Plaintiffs have cited no analogous written law here.

state legislators. But the fact that a legislator acts within her scope of employment when speaking to the public does not itself mean that the legislator is speaking on behalf of the state as discussed in *Lindke*.[5]

In the end, the district court was correct to conclude that Plaintiffs' claim fails at *Lindke*'s first step. Although legislators may at times have authority to speak on behalf of the state, Plaintiffs have failed to point to any "statute, ordinance, regulation, custom, or usage" that would lead to such a conclusion in this case. *Lindke*, 601 U.S. at 200. Because Plaintiffs cannot demonstrate that Jackson's conduct constituted state action, their § 1983 claim must fail. *Id.* at 201.

## IV. Conclusion

Accordingly, we AFFIRM.

---

[5] Indeed, it is worth pointing out that the legislature acts as a body. *See* LA. CONST. art. III, § 1(B). An individual legislator, of course, does not have authority to take official legislative action on her own. Nonetheless, we do not say that a legislator may only speak on the state's behalf when enacting legislation, or that no individual legislator may ever speak on the state's behalf. We conclude only that Plaintiffs have failed to satisfy *Lindke*'s demands in this case.

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**THOMAS B. PLUNKETT, III**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

October 13, 2026

Mr. Daniel J. McCoy
Western District of Louisiana, Monroe
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

No. 25-30514 Detiege v. Jackson
USDC No. 3:23-CV-175

Dear Mr. McCoy,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Sincerely,

THOMAS B. PLUNKETT, III, Clerk

By: S. Rasheed
Shatyra Rasheed, Deputy Clerk
504-310-7646

cc:
Mr. Jorge Benjamin Aguinaga
Ms. Elizabeth L. Brown
Ms. Morgan Brungard
Ms. Anna Cleveland
Mr. Zachary Faircloth
Mr. Bruce Warfield Hamilton
Mr. Thomas Moore Hayes IV
Ms. Caitlin Ann Huettemann
Mr. John Ryan Riedmueller